**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| NORMAN BROWN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-4082 |
| | ) | |
| ANNE L. PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR CLASS CERTIFICATION</u>**

# **TABLE OF CONTENTS**

I.  Legal Standard ................................................................................................................. 2

II.  Argument ......................................................................................................................... 3

   A.  The Proposed Class is Adequately Defined and Clearly Ascertainable ............................ 3

   B.  The Proposed Class Satisfies All Rule 23(a) Requirements ................................................. 4

      1.  Numerosity ...................................................................................................... 4

      2.  Commonality ................................................................................................... 6

      3.  Typicality ....................................................................................................... 11

      4.  Adequacy ....................................................................................................... 12

   C.  The Proposed Class Satisfies All Rule 23(b) Requirements ................................................. 13

      1.  Rule 23(b)(1)(A) ........................................................................................... 13

      2.  Rule 23(b)(2) ................................................................................................. 14

III.  Conclusion ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 13, 14

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) .................................................. 6

*Barrett v. Claycomb*, No. 11-CV-04242-NKL, 2011 WL 5822382 (W.D. Mo. Nov. 15, 2011) ... 3

*Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980) ........................................ 14

*Darling v. Bowen*, 685 F. Supp. 1125 (W.D. Mo. 1988) ............................... 5

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ....................... 6, 11

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) ............................. 11

*Downing v. Goldman Phipps, PLLC*, 2015 WL 4255342 (E.D. Mo. July 14, 2015) ................... 7

*Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) ................................. 14

*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009) ........................... 4

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) .................. 3

*In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006) ......................... 6

*Miller v. Alabama*, 132 S. Ct. 2455 (2012) .................................................. 1

*Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718 (2016) ................... 1

*Morgan v. United Parcel Serv. of America, Inc.*, 169 F.R.D. 349 (E.D. Mo. 1996) .................. 12

*Mund v. EMCC, Inc.*, 259 F.R.D. 180 (D. Minn. 2009) ................................. 6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ............... 11

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .............................. passim

*Rikard v. U.S. Auto Prot., L.L.C.*, 287 F.R.D. 486 (E.D. Mo. 2012) ......................... 6

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................... 4

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016) ..................... 2, 3

*Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993) .................................... 11

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir.2001).............................................................. 5

*U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860 (8th Cir. 1978) ................................. 6, 12

*Van Orden v. Meyers*, No. 4:09-CV-00971-AGF, 2011 WL 4600688 (E.D. Mo. Sept. 30, 2011) 5

*White v. 14051 Manchester Inc.*, 301 F.R.D. 368 (E.D. Mo. 2014) ............................... 6

**Statutes**

Mo. Rev. Stat. § 558.047 ...................................................................................... 1, 2, 14

Mo. Rev. Stat. § 565.033 ......................................................................................... 2, 14

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 3, 4, 13, 14

**Other Authorities**

Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356 (1967)...................................................... 13

**Treatises**

1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (3d ed. 1992).......................... 7

5-23 *Moore's Federal Practice - Civil* § 23.43(1)(b) (2018) ...................................... 14

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2015) ..... 2

8 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002)..................... 2, 5

Plaintiffs Norman Brown, Ralph McElroy, Sidney Roberts, and Theron Roland (collectively, the "Named Plaintiffs") are prisoners in the Missouri Department of Corrections who are serving life without parole sentences—sentences mandatorily imposed for crimes they are convicted of committing when they were children. Until recently, Named Plaintiffs and the class they seek to represent expected to die behind bars. But in 2012, the United States Supreme Court ruled such mandatory life without parole ("LWOP") sentences unconstitutional and clarified that such sentences should be reserved for only "the rare juvenile offender whose crime reflects irreparable corruption." *See Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012); *see also Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718 (2016) (holding that *Miller* applies retroactively and LWOP is only appropriate for the most incorrigible juvenile offenders).

Four years later, Missouri passed Senate Bill 590—purported "*Miller* fix" legislation, which, among other things, provided that any person sentenced to LWOP prior to August 28, 2016, who was under 18 years of age at the time of the underlying offense, could petition the Missouri parole board "for a review of his or her sentence . . . after serving twenty-five years of incarceration on the sentence of life without parole." Mo. Rev. Stat. § 558.047.1(1)

This parole process afforded to Named Plaintiffs and others similarly situated does not provide a meaningful opportunity for release based on demonstrated rehabilitation and maturation, as required by *Miller* and its progeny. Furthermore, the process is riddled with due process issues. In fact, the parole process does not even comply with the letter of the law set forth in Mo. Rev. Stat. §§ 558.047 and 565.033.

Named Plaintiffs and the class of prisoners they seek to represent are all subjected to the same policies, procedures, and customs that deny them a meaningful opportunity for release and violate their due process rights. Thus, they seek prospective relief on behalf of a class of similarly

1

situated persons: Individuals in the custody of the Missouri Department of Corrections who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense (the "Proposed Class"). For the reasons stated below, this case should proceed as a class action under Rule 23, and Plaintiffs' Motion for Class Certification should be granted.

## I. <u>LEGAL STANDARD</u>

Class actions for injunctive relief are favored in civil rights actions and, in particular, to address systemic issues within the criminal justice system. *See* 8 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 25:18 (4th ed. 2002) ("The class action device was specifically designed to aid the court and the parties in resolving certain difficulties common to criminal justice class suits."). Moreover, it is well established that the requirements of Rule 23 must be "construed in light of the objectives of the rule—to provide for the expeditious handling of disputes and to allow a remedy for those for whom it would be unrealistic to expect to resort to individual litigation." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1754 (3d ed. 2015).

To meet the requirements for a class under Federal Rule of Civil Procedure 23, Plaintiffs must make three showings. *First*, Plaintiffs must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted).

*Second*, Plaintiffs must demonstrate that the proposed class satisfies the requirements of Rule 23(a), namely that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Third*, Plaintiffs must demonstrate that the proposed class fits into at least one of the categories identified in Rule 23(b). As relevant here, a class may be maintained if (1) individual actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (2) the party opposing the class acted on grounds that apply generally to the class. Fed. R. Civ. P. 23(b)(1)(A), (2).

In conducting its inquiry, this Court must "liberally construe[]" Rule 23(a) and should not resolve the merits of the dispute. *See Barrett v. Claycomb*, No. 11-CV-04242-NKL, 2011 WL 5822382, at *1 (W.D. Mo. Nov. 15, 2011) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)).

## II.    ARGUMENT

### A.   The Proposed Class is Adequately Defined and Clearly Ascertainable

As an initial matter, Plaintiffs' Proposed Class is "adequately defined and clearly ascertainable," as required for certification. *Sandusky Wellness Ctr.*, 821 F.3d at 996. Defendants maintain a list of individuals serving LWOP sentences who were under 18 at the time of the offense. *See* **Exhibit A** (AGO0000262-263). Further, MDOC records (such as an inmate's "face sheet") clearly indicate the sentence or sentences individuals are serving. *See, e.g.,* **Exhibit B**

3

(AGO0002427-2429;     AGO0002610-2612;     AGO0002824-2826;     AGO0003128-3131).[1]
Therefore, the members of the Proposed Class are readily and clearly ascertainable.

**B.  The Proposed Class Satisfies All Rule 23(a) Requirements**

The Proposed Class satisfies Rule 23(a) because: (1) the size of the Proposed Class (over 90 individuals) is such that joinder of all members would be impracticable; (2) the questions of law and fact raised by the suit are common to all members of the Proposed Class, and a decision by this Court on those common questions would resolve class claims simultaneously; (3) the Named Plaintiffs' claims and interests are aligned with and typical of those of the Proposed Class members; and (4) the Named Plaintiffs and their undersigned counsel will adequately and zealously represent the interests of the Proposed Class.

### 1.Numerosity

The requirement of numerosity is satisfied here because the Proposed Class of individuals in the custody of the Missouri Department of Corrections ("MDOC"), who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense, is numerous and joinder of all members is impracticable. According to the Defendants' own records, the Proposed Class is comprised of 95 individuals incarcerated at various MDOC facilities across the Show Me State. *See* **Exhibit A**.

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), but "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rule 23(a)(1) sets a "low threshold for numerosity," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *see also Stewart v.*

---

[1] **Exhibits B**, **E**, and **G** hereto have been filed under seal with the Court, pursuant to the parties' protective order (Doc. # 54) and with leave of the Court (Doc. #101).

4

*Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") (citations omitted). "Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the identity or location of many class members is unknown for good cause." 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:5 (4th ed. 2002). This is because numbers alone are not determinative of the numerosity requirement: "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

A class of 95 individuals clearly meets this threshold. It would be impracticable to join all 95 members of the Proposed Class—individuals who are all incarcerated at various institutions dispersed across the state of Missouri. *See Darling v. Bowen*, 685 F. Supp. 1125, 1127 (W.D. Mo. 1988) (geographic dispersion of class members contributed to impracticability finding). Furthermore, because the class members have been incarcerated their entire adult lives, many are indigent and financially unable to hire counsel and fund litigation themselves.

Joinder would not only be impracticable, but it would also be a waste of judicial resources. This is particularly true where, as here, "[i]t is clear that joining each of the putative plaintiffs individually and trying separate suits for each would be wasteful, duplicative, and time consuming. And, if each of the Plaintiff's claims were tried individually, much of the evidence and many of the witnesses would be the same in each case, constituting a waste of judicial resources." *Van Orden v. Meyers*, No. 4:09-CV-00971-AGF, 2011 WL 4600688, at *6 (E.D. Mo. Sept. 30, 2011).

5

In light of the size of the Proposed Class, the circumstances of its members, and the common issues of fact and law (discussed further below), Plaintiffs satisfy Rule 23's numerosity requirement.

### 2.Commonality

The commonality requirement is satisfied because Named Plaintiffs' claims for prospective relief present common questions of law and fact regarding Defendants' policies, practices, and customs related to parole consideration for the Proposed Class members.

Commonality is "typically not difficult for class action plaintiffs to meet." *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 380 (E.D. Mo. 2014) (citations omitted); *see also Rikard v. U.S. Auto Prot.*, *L.L.C.*, 287 F.R.D. 486, 489–90 (E.D. Mo. 2012) ("[T]he commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied.") (quoting *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 183 (D. Minn. 2009)). "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)); *see also Paxton*, 688 F.2d at 561 ("The rule does not require that every question of law or fact be common to every member of the class.").

The commonality requirement "does not mean that the claims of the representatives must raise identical questions of law and fact with those raised by the claims of the rest of the class. "[O]ne common question of law or fact can be sufficient if the other pre-requisites are satisfied." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978) (citation omitted); *accord Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted.") (citing 1 Alba Conte &

Herbert B. Newberg, *Newberg on Class Actions* § 3.10, at 3-50 (3d ed. 1992)). Commonality may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Downing v. Goldman Phipps, PLLC*, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton*, 688 F.2d at 561).

In this lawsuit, Plaintiffs do not challenge their individual sentences, or the fact or duration of their confinement. *See* Second Am. Compl. at ¶ 15. Instead, they challenge the policies, practices, and customs that govern parole consideration for them and others similarly situated—policies, practices, and customs that are uniformly enforced across the Proposed Class—and how they must be applied in light of the Supreme Court's mandate in *Miller* and *Montgomery*. In this case, there are questions of law and fact common to the Proposed Class, including: whether Defendants maintain a policy or custom of conducting parole review hearings for the Proposed Class in a manner that prevents Plaintiffs from obtaining a realistic and meaningful opportunity for release based on demonstrated rehabilitation, in violation of state and federal due process requirements and prohibitions on cruel and unusual punishment. *See* Second Am. Compl. at ¶ 174.

All Proposed Class members are subjected to the same parole review process—one that is largely the same as that provided to all other parole-eligible inmates. *See* December 6, 2017 deposition of Kelly Dills ("Dills Depo"), attached hereto as **Exhibit C**, 109:24-110:25 (describing the parole review process and testifying, "I don't believe that it is—other than the additional elements—that it's substantially different from any other parole consideration hearing."); *see also* November 2, 2017 Deposition of Steve Mueller ("Mueller Depo"), attached hereto as **Exhibit D**, 86:21-87:7 ("There are no specific juvenile life without policies. The policies that institutional parole officers would be using are those that would be related to parole consideration hearings.");

December 20, 2017 Deposition of Ellis McSwain ("McSwain Depo"), attached hereto as **Exhibit E**, 105:2-106:7 (testifying that SB 590 made a certain class of inmates eligible for parole consideration, and "I don't believe that we initiated some new process by which we conducted hearings."); Exhibit 3 to Second Am. Compl. (Doc # 65-3).

For example, all relevant hearings are conducted by a hearing panel, not the full Board—despite the fact that these are all majority Board decisions. *See* Procedure No. P6-6.1 (AGO0000275-80), attached hereto as **Exhibit F** ("Hearing Panel - A panel consisting of one Parole Board member and two hearing officers appointed by the Board who have decision making authority regarding parole considerations."); *see also* McSwain Depo at 127:1-24 ("Q. And all of these Senate Bill 590 hearings are by a panel, not the full board, correct? A. Yeah, I think they're the exact same with a panel hearing."). As a result, Proposed Class members are prevented the opportunity to speak in person with all individuals deciding their fate. And all Proposed Class members are limited to having one delegate present. *See* Mueller Depo, 190:16-19 ("They can have one delegate."); *see also* January 25, 2018 Deposition of Kenny Jones ("Jones Depo"), attached hereto as **Exhibit G**, 50:17-19 (Q. So that's four people on the victim's side. How many delegates does the inmate get? A. One.").

An Institutional Parole Officer ("IPO") testified that she conducts the same prep work for pre-hearing interviews with inmates, uses the same worksheet for all JLWOP[2] pre-hearing interviews, and prepares a pre-hearing report in each case. *See* December 21, 2017 Deposition of Jessica Bliesath ("Bliesath Depo-Vol. I"), attached hereto as **Exhibit H**, 21:8-29:22 (and Exhibit 4 thereto) (testifying about the pre-hearing process for all individuals serving JLWOP sentences);

---

[2] As used herein and in Plaintiffs' Second Amended Complaint, "JLWOP" refers to a mandatory LWOP sentence imposed on an individual who was under 18 years of age at the time of the crime.

*see also* December 28, 2017 Deposition Bliesath ("Bliesath Depo-Vol. II"), attached hereto as **Exhibit I**, 16:23-17:1. These pre-hearing reports follow the same outline, as dictated by Board policy and procedure. *See* Bliesath Depo-Vol. II at 24:1-25:1 (and Exhibit 8 thereto (AGO0003584-3593)) ("Q. And you follow the same format for every prehearing report you do regardless of whether the inmate is serving juvenile life without parole or not, correct? A. Correct."); *see also* Jones Depo at 45:4-25 (testifying that pre-hearing reports follow a standard and consistent order and outline, and the reports are used to run the parole hearings).

The Defendants use the same forms to indicate their vote for all JLWOP hearings. *See* McSwain Depo at 133:19-135:1 (and Exhibit 8 (AGO0000060-61) and Exhibit 9 (AGO0000028) thereto) (testifying that Exhibits 8 and 9 are forms used in every JLWOP parole hearing); *see also* Mueller Depo at 182:13-187:16. All Proposed Class members are informed of their parole decisions on the same form, with boilerplate language supporting the basis for the decisions. *See* McSwain Depo at 202:6-9 ("Q. Okay. Are all parole board decisions, in your experience, generated and conveyed to an inmate on this same form? A. Um, yes, that it [sic] is true."); *see also* Exhibits 7 and 10 to Second Am. Compl. (Doc #65-7, 65-10).

Defendants do not use any risk assessment tools or objective guidelines in their decision-making for any of the Proposed Class members. *See* Bliesath Depo-Vol. I at 35:12-25 (testifying she is not aware of any risk assessment tool used for individuals serving JLWOP sentences); *see also* Bliesath Depo-Vol. II at 26:5-10 (testifying there are no guideline matrixes for JLWOP parole decisions); *see also* Mueller Depo at 70:6-17 ("There are no guidelines."). And all Proposed Class members are prohibited from seeing the worksheet used to generate their pre-hearing report, the pre-hearing report itself, or any other part of their parole file. *See* Dills Depo at 82:25-83:12 ("Q. Does the inmate ever get to see that [pre-hearing] report? A. No. Q. Does the inmate ever get to

see the worksheet that is used to generate that report? A. No."), 87:13-19 ("Q. Sure. The inmates don't have access to their own parole file? A. No."); *see also* McSwain Depo at 137:20-138:15 (testifying that the inmate does not get to see the board action sheet or pre-hearing report and does not get a copy of the recording of their parole hearing); MDOC Procedures Governing the Granting of Paroles and Conditional Releases (AGO0000067-93), attached hereto as **Exhibit J**; Exhibits 4 and 5 to Second Am. Compl. (Doc #65-4, 65-5). In fact, although Chairperson Jones testified he thought it was important for an inmate to know what evidence was considered by the Board in reaching its decision (Jones Depo at 54:10-13), he acknowledged the inmate does not have that ability:

> Q. As you already testified to, if statements are made outside of the inmate's presence at a hearing by a victim or representative, either in person or by written submission, they -- they would have no idea what was said, correct?
>
> **A. That's correct.**
>
> Q. Because they're not allowed to see the parole file, correct?
>
> **A. Yes.**

Jones Depo at 53:16-24. As a result, Proposed Class members do not know what evidence is presented against their request for parole release.

The Named Plaintiffs' experiences before the parole board will provide concrete examples of how these overarching policies, practices, and customs fail to live up to the *Miller* mandate and statutory requirements of Mo. Rev. Stat. §§ 558.047 and 565.033. But it is their collective experience, and Defendants' own testimony about their policies and procedures, that supports the conclusion that Defendants' policies, practices, and customs deny all juvenile offenders serving mandatory LWOP sentences a meaningful opportunity for release based on demonstrated maturity and rehabilitation and are therefore entitled to prospective equitable relief.

10

### 3. Typicality

The Named Plaintiffs' claims are typical of other members of the Proposed Class. "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). This requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Like the numerosity and commonality requirements, Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" is a "low threshold" requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) ("The threshold requirements of commonality and typicality are not high."); *Paxton*, 688 F.2d at 562 ("The burden of showing typicality is not an onerous one"). The typicality requirement is satisfied if the class representatives' claims "arise[] from the same event or course of conduct as the class claims, and give[] rise to the same legal or remedial theory." *Alpern*, 84 F.3d at 1540; *see also Paxton*, 688 F.2d at 561-62.

The Named Plaintiffs' claims and the claims of the Proposed Class arise from the same course of conduct: Defendants' policies, practices, and customs surrounding their parole review for juvenile offenders serving mandatory LWOP sentences and who are eligible for a "review of their sentence" under Mo. Rev. Stat. §§ 558.047 and 565.033. Named Plaintiffs claim that these policies, practices, and customs deny them a meaningful opportunity for release based on demonstrated maturity and rehabilitation, and systematically violate their due process rights. They also claim that Defendants' policies, practices, and customs do not satisfy the letter or spirit of Mo.

Rev. Stat. §§ 558.047 and 565.033. These claims are the same as those that could be raised by any member of the Proposed Class, and all class members share a common injury of having these policies applied to them.

### 4. Adequacy

Named Plaintiffs have satisfied both requirements of Rule 23(a)(4): (1) Plaintiffs' attorneys are "qualified, experienced, and generally able to conduct the proposed litigation"; and 2) Plaintiffs do not "have interests antagonistic to those of the class." *U.S. Fid. & Guar. Co.*, 585 F.2d at 873; *see also Paxton*, 688 F.2d at 562-63. "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *Morgan v. United Parcel Serv. of America, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996).

Plaintiffs are represented by qualified, experienced, and well-resourced counsel in the present case. Attorneys from the Roderick and Solange MacArthur Justice Center and the law firm of Husch Blackwell LLP have between them decades of experience in litigation generally. Moreover, one of Plaintiffs' attorneys, Matthew D. Knepper, has significant experience in class action litigation and the issues involved with class notice, class administration, and other relevant issues. Plaintiffs are also represented by Amy E. Breihan with the Roderick and Solange MacArthur Justice Center ("MJC"). MJC is a non-profit public interest law firm whose attorneys have experience in litigating complex civil rights matters – including but not limited to prisoners' rights cases – in federal court. Amy E. Breihan, a staff attorney at MJC, has practiced in Illinois and Missouri for over 5 years, litigating complex civil cases at the trial and appellate levels. Ms. Breihan and the other attorneys of record also have extensive experience with the unique challenges involved in communicating and providing notice to incarcerated individuals, which may be necessary if and when relief is granted to the Proposed Class Members.

12

In addition, Named Plaintiffs' interests are not antagonistic to those of the Proposed Class. They have every motive to see this case succeed so they can receive a meaningful opportunity for release from prison, and their interest in doing so coincides with the interests of other class members. This Court should thus find that the requirement of adequacy for class certification is satisfied.

### C.  <u>The Proposed Class Satisfies All Rule 23(b) Requirements</u>

Finally, a class must satisfy at least one of the requirements of Rule 23(b). Here, two independent subsections of Rule 23(b) are satisfied: 23(b)(1)(A) and 23(b)(2).

#### 1. Rule 23(b)(1)(A)

This case meets the requirements of Rule 23(b)(1)(A), which allows for certification of a class when not doing so would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 388 (1967)).

At the heart of this case are the policies, practices, and customs of the Parole Board and its staff to which an entire class of individuals are subjected. The entire Proposed Class is entitled to relief following the *Miller* and *Montgomery* decisions and implementation of Senate Bill 590. Further, litigating the Proposed Class members' claims individually would present a risk of varying outcomes in what standards of conduct should apply when conducting a parole review for all individuals serving LWOP sentences who were under 18 at the time of the offense.

13

### 2. Rule 23(b)(2)

The Proposed Class also satisfies all requirements of Rule 23(b)(2). "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits'" such as this one. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (citation omitted); *see also Amchem Prods., Inc.*, 521 U.S. at 614; 5-23 *Moore's Federal Practice - Civil* § 23.43(1)(b) (2018) ("Rule 23(b)(2) was promulgated . . . essentially as a tool for facilitating civil rights actions.").

Plaintiffs' Proposed Class is a textbook example of a Rule 23(b)(2) class: Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Because the Proposed Class is "cohesive" and because a single injunction or declaratory judgment would provide relief to each member of the class, this Court should certify the Proposed Class under Rule 23(b)(2). *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

Defendants' refusal to provide Named Plaintiffs and those similarly situated with a meaningful opportunity for release based on demonstrated maturity and rehabilitation applies to each member of the Proposed Class. Absent an order from this Court, all members of the Proposed Class who receive parole consideration under the recent change in Missouri law will be subjected to the same inadequate policies, procedures, and customs, and will suffer the same constitutional harms. Because Defendants continue to act on grounds that apply to the entire Proposed Class, final injunctive relief and corresponding declaratory relief is appropriate for the Proposed Class as a whole.

14

# III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court certify a Plaintiff Class of all individuals in the custody of the Missouri Department of Corrections who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense; appoint Norman Brown, Ralph McElroy, Sidney Roberts, and Theron Roland as class representatives; and appoint Amy E. Breihan, Matthew D. Knepper, Sarah L. Zimmerman, Denyse L. Jones, and Jordan T. Ault as class counsel.

Respectfully submitted,

RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER

By: /s/ Amy E. Breihan
Amy E. Breihan, # 65499MO
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org

HUSCH BLACKWELL LLP

By: /s/ Denyse L. Jones
Matthew D. Knepper, # 61731MO
Sarah L. Zimmerman, # 69440MO
Denyse L. Jones, # 53611
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Phone: (314) 480-1500
Fax: (314) 480-1505
Matt.Knepper@huschblackwell.com
Sarah.Zimmerman@huschblackwell.com
Denyse.Jones@huschblackwell.com

Jordan T. Ault, #59599MO
235 East High Street
P.O. Box 1251

Jefferson City, MO 65102
Phone: (573) 635-9118
Fax: (573) 634-7854
Jordan.Ault@huschblackwell.com

Dated: March 30, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2018, a true and correct copy of the foregoing was electronically filed using the Court's online case filing system, which will send notice to all counsel of record.

By: /s/ Amy E. Breihan
One of Plaintiffs' Attorneys

17