# In The
# United States District Court
# Western District of Missouri

NORMAN BROWN, et al.,

Plaintiffs,

v.

ANNE L. PRECYTHE, et al.,

Defendants.

## SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**JOSHUA D. HAWLEY**
Attorney General

**Michael J. Spillane**
Counsel of Record
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-1307
Facsimile: (573)751-3825
Attorneys for Respondent

# TABLE OF CONTENTS

Table of Contents .................................................................................................. i

Table of Authorities .............................................................................................. ii

**Statement of Uncontroverted Material Facts** ............................................... v

**Statement of Exhibits** ....................................................................................... 1

**Standard of Analysis** ......................................................................................... 3

I. **This Court should Grant Summary Judgment for Defendants on the Due Process Claims** ...................................... 5

II. **This Court should Grant Summary Judgment for Defendants on the Cruel and Unusual Punishment Claims..** ............................................................................................. 10

III. **This Court should Grant Summary Judgment for Defendants on the State Law Claim** ........................................ 11

**Conclusion** .......................................................................................................... 12

Case 2:17-cv-04082-NKL   Document 134   Filed 06/12/18   Page 2 of 24

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986) ................................................................................. 4

*Burnett v. State*,

311 S.W.3d 810 (Mo. App. 2009)............................................................ 5

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986) ............................................................................. 3, 4

*Conseco Life Ins. Co. v. Williams*,

620 F.3d 902 (8th Cir. 2010) ................................................................... 4

*Gettings v. Mo. Dep't of Corrections*,

950 S.W.2d 7 (Mo. App. 1997)................................................................ 8

*Gonzalez-Perez v. Harper*,

241 F.3d 633 (8th Cir. 2001) ................................................................... 5

*Greenholtz v. Nebraska*,

442 U.S. 1 (1979) ........................................................................ 7, 9, 10

*Jamison v. State*,

218 S.W.3d 399 (Mo. 2007) .................................................................... 5

*Maggard v. Wyrick*,

800 F.2d 195 (8th Cir. 1996).................................................................... 5

Case 2:17-cv-04082-NKL   Document 134   Filed 06/12/18   Page 3 of 24

*Marshall v. Mitchell,*

    57 F.3d 671 (8th Cir. 1995) ............................................................................. 5

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.,*

    475 U.S. 574 (1986) ......................................................................................... 4

*Miller v. Alabama,*

    567 U.S. 460 (2012) ........................................................................... 6, 8, 10, 11

*Montgomery v. Louisiana,*

    136 S.Ct. 718 (2016) .................................................................................. 6, 11

*Sandin v. Connor,*

    515 U.S. 472 (1995) ....................................................................................... 7, 8

*State ex rel. Cavallaro v. Groose,*

    908 S.W.2d 133 (Mo. 1995) ............................................................................. 8

*Torgeson v. City of Rochester,*

    643 F.3d 1031 (8th Cir. 2011) ........................................................................ 3

*Weirman v. Casey's General Stores,*

    638 F.3d 984 (8th Cir. 2011) .......................................................................... 4

*Williams v. City of St. Louis,*

    783 F.2d 114 (8th Cir. 1986) .......................................................................... 4

## Statutes

42 U.S.C. § 1983 ................................................................................................ 5

Missouri Rev. Statute § 558.047 ...........................................................passim

Missouri Rev. Statute §217.690.1 .................................................................. 7

Missouri Rev. Statute § 565.033 .............................................................. 4, 13

Wyo. Stat. Ann. § 6–10–301(c) (2013) ........................................................... 7

iv

# STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. The plaintiffs in this case are four offenders who were formerly sentenced to life without parole for homicides they committed before age 18, but they are now eligible for parole consideration on their murder sentences after serving 25 years on the murder sentences. Document 64 at 1.

2. All four plaintiffs have had parole hearings at which they presented evidence. Document 64 at 1; S.J. Ex. 14–17.

3. As of May 2018, the Board of Probation and Parole has held hearings for 30 offenders formerly serving life without parole sentences for first-degree murders committed while under age 18. S.J. Ex. 22. Of those offenders, four have been scheduled for release dates following their first parole hearing. S.J. Ex. 22. Others have received dates for reconsideration hearings, or have been ineligible for parole for reasons such as really being over 18 at the time of the offense, or having consecutive sentences that push parole eligibility into the future, or not yet being eligible under the statute. S.J. Exhibit 22; S.J. Ex. 3 at 274–78.

4. All parole-eligible offenders, like Plaintiffs, receive a hearing before a three-person panel which includes one Parole Board member. Each offender's case case is then reviewed by majority of the Parole Board with members considering the case in turn until a majority decision is reached.

S.J. Ex. 3 at 185–88, 216–18, 235, 270–74; S.J. Ex. 8 at 102, S.J. Ex. 14–17.

5. Under Missouri law and Board rules, the votes of panel members and Board members are confidential, as are the contents of an offender's parole file. Ex. 4 at 86–90. S.J. Ex. 20.

6. The Chairman of the Parole Board considers confidentiality necessary to receive the most accurate information possible and to limit improper influence on decisions. Ex. 4 at 86–90; S.J. Ex. 20.

7. Overall, roughly 95 percent of Missouri Offenders who are eligible for parole or conditional release receive early release through parole or conditional release rather than completing their sentences. S.J. Ex. 7a at 84; S.J. Ex. 21.

8. Plaintiffs allege that Missouri parole procedures for offenders formerly sentenced to life without parole for murders committed while under age 18 violate the due process requirements and the bans on cruel and unusual punishment of the United States and Missouri Constitutions. Document 65 at 36–37. And they allege Missouri does not in practice follow the Missouri statutes passed to provide that special factors are considered in the cases of offenders originally sentenced to life without parole for murders committed under age 18. Document 65 at 37–38.

9. Missouri Revised Statute § 558.047, effective July 13, 2016, provides that offenders sentenced to life without parole for murders committed before August 28, 2016 while the offender was under age 18 may petition for parole on the murder sentence after serving 25 years on that sentence. S.J. Ex. 18.

10. Missouri Revised Statute § 558.047 provides five factors that it indicates the Parole Board shall consider in addition to factors listed in Missouri Revised Statute § 565.033. Those factors are: 1) efforts toward rehabilitation; 2) subsequent growth and increased maturity; 3) evidence that the offender has accepted accountability for the crime except in cases where he has maintained his innocence; 4) the offender's institutional record during incarceration; and 5) whether the person remains the same risk to society. S.J. Ex. 18.

11. Missouri Revised Statute § 565.033.2 lists 10 factors to be considered about offenders who committed first-degree murder before age 18. Those are: 1) the nature and circumstances of the offense; 2) the degree of culpability in light of age and role in offense; 3) age, maturity, intellectual capacity, mental and emotional health and development at the time of the offense; 4) background including family, income and community environment; 5) the likelihood of rehabilitation; 6) the extent of participation in the offense; 7) the extent of familial pressure or peer

pressure; 8) nature and extent of prior criminal history; 9) the effect of characteristics attributable to the defendant's youth on his judgment; and 10) a statement by the victim or victim's family members. S.J. Ex. 19

12. The factors in Missouri Revised Statute § 565.033.2 are incorporated into a pre-hearing report created by an institutional parole officer who interviews the offender and reviews documents about his case. The report is a principal document considered by the hearing panel and the majority Board in considering the case. So, the hearing panel and the Board consider the factors in §565.033. S.J. Ex 3 at 125–28, 161, 172–74, 177; S.J. Ex. 4 at 92–93;117–118; S.J. Ex. 5 at 230–44; S.J. Ex. 7 at 19–36, 41–86; S.J. Ex. 7a at 5–52; S.J. Ex. 8 at 70–72, 108–110, 140–47; S.J. Ex. 9 at 46–79; S.J. Ex. 10 at 47; S.J. Ex. 11 38–56; S.J. Ex. 13 65–80; S.J. Ex. 13 at 145–179.

13. The factors in Missouri Revised Statute § 558.047 are considered at the hearing and by the panel and by the Board, and a special page is added to the Board Action Sheet for comments on those factors. S.J. Ex. 3 at 125–28, 177, 182–85; S.J. Ex. 4 at 92–93, 117–118; S.J Ex 5 at 48–49, 230–44, S.J. Ex. 8 at 154–56; S.J. Ex. 13 65–80, 116–117, 145–179.

14. Parole Hearings for offenders formerly sentenced to life without parole for murders committed while under age 18 take longer than ordinary hearings. S.J. Ex. 3 at 269–270; S.J. Ex. 4 at 58–60.

viii

15.  Although he received a hearing, Plaintiff Brown is not now eligible for parole on his aggregate sentence structure because of parole ineligibility on consecutive sentences that makes him ineligible until 2025. S.J. Ex. 3 at 170; S.J. Ex. 23. He was rescheduled for a parole hearing in 2021. S.J. Ex. 23.

16.  In each case of an offender formerly sentenced to life without parole for a murder committed while under age 18, the Board and the panel consider the circumstances of the crime as well as the statutory factors in Sections 558.047 and 565.033, including rehabilitation and maturation, in making decisions. S.J. Ex. 1; S.J. Ex. 2; S.J. Ex 3 at 125-28, 161, 172–74, 177, 182–85; S.J. Ex. 4 at 175; SJ. Ex. 5 at 60–73; S.J. Ex. 6;  S.J. Ex. 18; S.J. Ex. 19; S.J. Ex. 13 at 65–80, 116–117; 145–179.

17.  The plaintiffs all received a parole hearing at which they could explain why they felt they were ready for parole. At those hearings, the Board considered the rehabilitation and maturation of each offender, and the offenders were informed of ways they could improve to make themselves better candidates for parole. S.J. Ex. 14 at 25-52; S.J. Ex. 15 at 20-42; S.J. Ex. 16 at 14–50; S.J. Ex. 17 at 16–46.

18.  It is a general practice at hearings, and after, to inform offenders of how they can improve and to give them motivation.  S.J. Ex. 6 at 96; S.J. Ex. 8 at 163–164.

19. The written notice of denial provided to the offender does not include all the reasons considered or used by the Board in denying parole. S.J. Ex. 4 at 117–118; S.J. Ex. 5 at 231–235; S.J. Ex. 8 at 209–211.

20. It is the general practice at hearings of offenders formerly sentenced to life without parole for murders committed when under age 18 to consider the offender's rehabilitation and maturation. S.J. Ex. 3 at 125–28, 280; S.J. Ex. 4 at 19, 60–77, 92–93, 117–118; S.J. Ex. 5 at 44–69, 71–73, 88, 93–98, 104–114, 120–244, S.J. Ex. 6 at 32, 37–61, 67–79, 84–89, 95–111; Ex. 9 at 46–79; S.J. Ex. 10 at 47; S.J. Ex. 11 at 38–56.

21. The only boxes on the form for notification to an offender of a parole denial are under the categories of either release at this time would depreciate the seriousness of the offense or that there is not a reasonable probability that if the offender were released at this time he would live and remain at liberty without again violating the law, but all of the "*Miller*" factors are still considered in making the determination. S.J. Ex. 4 at 117–118; S.J. Ex. 8 at 209; S.J. Ex. 13 at 249–255.

22. A notification of denial based on the seriousness of an offense does not prevent release following a future hearing. S.J. Ex. 3 at 28–29; S.J. Ex. 10 at 46; S.J. Ex. 12 at 112; S.J. Ex. 13 at 255–56.

x

# STATEMENT OF EXHIBITS

1. Defendants' Exhibit 1 is the worksheet used by institutional parole officers in generating prehearing reports that are used by the Parole Board including special information that is used in cases of offenders formerly sentenced to life without parole for murders committed before the offender reached age 18.

2. Defendants' Exhibit 2 is the worksheet filled out by the panel after each parole hearing concerning additional factors specifically considered in the cases of offenders formerly sentenced to life without parole for murders committed before the offender reached age 18.

3. Defendants' Exhibit 3 is the redacted deposition of Chief Parole Analyst Mueller.

4. Defendants' Exhibit 4 is the redacted deposition of Chairman Jones.

5. Defendants' Exhibit 5 is the redacted deposition of former Chairman McSwain.

6. Defendants' Exhibit 6 is the redacted deposition of Vice Chairman Zamkus.

7. Defendants' Exhibit 7 is the redacted deposition of Institutional Parole Officer Bliesath.

1

8. Defendants' Exhibit 8 is the redacted deposition of Director of Board Operations Dills.

9. Defendants' Exhibit 9 is the redacted deposition of probation and parole regional supervisor Kasak.

10. Defendants' Exhibit 10 is the redacted deposition of former Board member Ruzicka,

11. Defendants' Exhibit 11 is the redacted deposition of parole analyst George.

12. Defendants' Exhibit 12 is the redacted deposition of Board member Rucker.

13. Defendants' Exhibit 13 is the redacted deposition of Board member Dusenberg.

14. Defendants' Exhibit 14 filed is the redacted parole hearing transcript of one of the plaintiffs.[1]

15. Defendants' Exhibit 15 is the redacted parole hearing transcript of one of the plaintiffs.

16. Defendants' Exhibit 16 is the redacted parole hearing transcript of one of the plaintiffs.

---

[1] The names of the parties involved in the parole hearings have been redacted under the protective order in effect in this case.

17.   Defendants' Exhibit 17 is the redacted parole hearing transcript of one of the plaintiffs.

18.   Defendants' Exhibit 18 is Missouri Revised Statute § 558.047.

19.   Defendants' Exhibit 19 is Missouri Revised Statute § 565.033.

20.   Defendants' Exhibit 20 is a letter from Parole Board Chairman Jones.

21.   Defendants' Exhibit 21 is the 2016 Profile of the Institutional and Supervised Offender Population.

22.   Defendant's Exhibit 22 is a spreadsheet showing the results of initial parole hearings for offenders sentenced to life without parole for murders committed while under age 18.

23.   Notification of parole denial to Plaintiff Brown.

## STANDARD OF ANALYSIS

Summary judgment is not a disfavored procedural shortcut, but "is an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Torgeson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1042. The movant bears the burden of informing the district court of the basis for its motion and must identify the portions of the record that demonstrate the absence of a genuine issue of

3

material fact. *Id.* The non-movant must respond by submitting evidentiary materials that set out specific facts showing a genuine evidentiary issue for trial. *Id.*

A movant is entitled to summary judgment upon a claim by showing that there is no genuine issue of material fact on that claim and the movant is entitled to judgment as a matter of law. *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that affect the outcome of the suit under governing law prevent summary judgment. *Weirman v. Casey's General Stores*, 638 F.3d 984, 993 (8th Cir. 2011). The nonmoving party receives the benefit of reasonable inferences that may be drawn from the evidence. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). A party opposing summary judgment cannot merely deny the allegations, but must point to evidence in the record that shows there is a dispute of fact that is material to the outcome of the case. *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909–10 (8th Cir. 2010).

To succeed on a 42 U.S.C. § 1983 federal claim the plaintiffs must prove that the defendants deprived them of a right secured by the United States Constitution or federal law, and that the defendants did so acting

4

under the color of state law. *Gonzalez-Perez v. Harper*, 241 F.3d 633, 37 (8th Cir. 2001). Plaintiffs' complaints under the Missouri Constitution and United States Constitution are identical and may be analyzed together, as the provisions of each constitution provide the same entitlement to due process and the same bar on cruel and unusual punishment. *See Jamison v. State*, 218 S.W.3d 399, 405 n.7 (Mo. 2007) (Missouri Due Process Clause parallels the federal Due Process Clause); *Burnett v. State*, 311 S.W.3d 810, 814 n.3 (Mo. App. 2009) (Missouri Constitution and United States Constitution provide the same protection from cruel and unusual punishment and the same review is applied).

## ANALYSIS

## I. This Court should grant summary judgment for Defendants on the due process claims.

State statutes and regulations can create a constitutionally protected liberty interest in release on parole if those statutes or regulations dictate that an offender must be released on parole if certain criteria are met. *Maggard v. Wyrick*, 800 F.2d 195, 198 (8th Cir. 1996). But in Missouri, the parole statute and regulations do not create an entitlement to release if certain criteria are met; thus, there is no liberty interest in *release* on parole and no entitlement to the use of particular procedures in the parole process to protect a liberty interest in release. *Marshall v. Mitchell*, 57 F.3d 671, 672–73

(8th Cir. 1995) (upholding dismissal of due process challenge to Missouri parole procedures as frivolous); Missouri Revised Statute § 217.690.1. Missouri Revised Statute § 558.047 provides that in the case of offenders sentenced to life without parole for murders committed while the offender was under age 18 the Board shall hold a hearing parole on the murder sentence after the offender has served 25 years on the murder sentence, if the offender requests it, and "shall consider" enumerated factors listed in that statute and another statute. The statutes do not create an entitlement to release if particular criteria are met, but leave the discretion whether to release with the Board under Missouri Revised Statute § 217.690.1.

Neither *Miller v. Alabama*, 567 U.S. 460 (2012) nor *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) creates an entitlement to release for youthful murderers who were sentenced to life without parole when particular criteria are met. The majority opinion in *Montgomery* held that a state may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole. *Id*. at 736. The Court cited as an example of such a proper remedy Wyo. Stat. Ann. § 6–10–301(c) (2013). *Id*. The statute cited by the Court as an appropriate remedy does not provide for additional parole consideration beyond what is given to other offenders. *See* Wyo. Stat. Ann. § 6–10–301(c) (2013).

6

In *Greenholtz v. Nebraska*, 442 U.S. 1 (1979) the United States Supreme Court held that where state law created an entitlement to release on parole if certain criteria were met then certain procedures may be required to protect that entitlement to release. But the Court held that the procedures required by this liberty interest in release were limited to having a parole hearing so the offender could argue that he met the criteria, and the offender being informed how he fell short of the criteria that mandated release, so the offender could see how he could meet the criteria in the future. *Id.* at 15–16. The Court explicitly held that even where there is a liberty interest in release the procedure required does not extend to a requirement that the Board reveal or even summarize the evidence it relied on in denying parole, as that would tend to convert the process into an adversary proceeding. *Id.*

In *Sandin v. Connor*, 515 U.S. 472 (1995) the United States Supreme Court emphasized that for the Due Process Clause to be implicated in the context of a prison case there must be some grievous loss by the offender either in the sense of additional restraint or an atypical significant departure from the basic conditions that fall within the parameters of a prison sentence. *Id.* at 474–488. The liberty interest, if one exists, is in avoiding a grievous loss, not in receiving particular procedures themselves. The required procedures, if any are required, are the process required in taking away the

7

protected lack of restraint, not themselves the thing in which there is a liberty interest. In *Sandin*, the Court held that even though a State regulation made prison misconduct a relevant consideration in parole determinations, that did not create a liberty interest in release that required particular procedures be used in conduct violation hearings. *Id*.

Here, there is no statutory or regulatory entitlement to release if certain criteria are met. S.J. Ex. 18, 19; *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 134–36 (Mo. 1995); *Gettings v. Mo. Dep't of Corrections*, 950 S.W2d 7, 10 (Mo. App. 1997). On the contrary there is, as in *Sandin*, a requirement that certain factors be considered in making a discretionary parole decision. S.J. Ex. 18, 19. So there is no liberty interest in *release* and no particular procedure required for parole hearings required to protect that non-existent liberty interest in release. Any requirement for specific procedures in parole hearings here does not come from *Greenholtz* or *Sandin* or any other Supreme Court precedent interpreting the Due Process Clause.

The majority opinion in *Miller* holds that a judge or jury must have the opportunity to consider mitigating circumstances before imposing a sentence of life without parole on offenders who committed murder before reaching age 18. *Miller*, 567 U.S. at 489. The majority decision in *Montgomery* suggests examples of evidence offenders might present to demonstrate rehabilitation

but does not mandate any particular procedures to be used by Parole Boards. *Montgomery*, 136 S.Ct. at 136.

Assuming for the sake of argument that, *Miller* and *Montgomery* somehow create an entitlement to some limited particular parole procedures, despite there being no entitlement to release if particular criteria are met, the procedures provided by Missouri, and actually used in the cases of offenders formerly sentenced to life without parole for murders committed before age 18, more than meet any plausible threshold of what such theoretical procedures are required. The threshold in *Greenholtz,* where there were particularized criteria that created entitlement to release, was an opportunity for a hearing on whether the offender met the criteria and guidance on how the offender fell short of the criteria that created an entitlement to release. *Greenholtz*, 442 U.S. at 15–16. Here, the plaintiffs all had hearings at which they could present evidence about their maturation and rehabilitation, the Panel and majority Board were mandated by law to consider that, and other evidence in the record, on those topics, and made discretionary decisions based on that information. *Statement of Uncontroverted Material Facts,* at ¶¶ 9–22. Although there were no mandatory criteria of the type discussed in *Greenholtz*, the Board still gave each offender guidance, at his hearing, on how to prepare for future hearings. *Statement of Uncontroverted Material Facts,* at ¶¶17–18. Such guidance is

not constitutionally necessary because it is required where there are statutory or regulatory criteria that create an entitlement to release, and the point of the guidance is to show how to meet those criteria. But here the plaintiffs have received guidance on how to improve, even without an entitlement to release.

Similarly, the right to have a hearing and present evidence in *Greenholtz* is meant to give offenders an opportunity to show that they have met the criteria for mandatory release. Here, the offenders have no entitlement to mandatory release if particular criteria are met. Even so, all Plaintiffs received a hearing anyway, and they were able to present evidence concerning their maturation and rehabilitation considered by the hearing panel and the majority Board; and it was considered. *Statement of Uncontroverted Material Facts*, at ¶¶ 9–22. Assuming there is any right to particular procedures for the plaintiffs under the Due Process Clause, which no binding precedent supports, the plaintiffs have had more process than they are constitutionally entitled to receive.

## II. This Court should grant summary judgment for Defendants on the cruel and unusual punishment claims.

*Miller v. Alabama* is a case about cruel and unusual punishment. The holding of *Miller* is that an offender who commits murder while under age 18 has a right to present mitigating evidence at sentencing rather than receiving

a mandatory life without parole sentence. *Miller*, 567 U.S. at 489. Also as discussed above, it is a proper remedy for a *Miller* violation to make the offender eligible for parole consideration after serving 25 years' imprisonment on the murder sentence. *Montgomery*, 136 S.Ct. at 736. The plaintiffs all received parole consideration hearings at which their rehabilitation and maturation were considered. *Statement of Uncontroverted Material Facts*, at ¶¶ 9–22. *Miller* and *Montgomery* do not hold that offenders formerly sentenced to life without parole for murders committed before age 18 must receive any procedures that are different than the parole procedures normally used in a state. *Montgomery* in fact gives as an example of a proper remedy a Wyoming statute that makes such offenders parole eligible using the same considerations as for all other offenders. Here, the offenders all received special consideration of their maturation and rehabilitation that is not mandated by United States Supreme Court precedent. There is no argument that can be supported by binding precedent that the remedy provided to the plaintiffs here is not more than constitutionally adequate.

### III. This Court should grant summary judgment for Defendants on the state law claim.

Missouri Revised Statute § 558.047 provides that in the case of offenders sentenced to life without parole for murders while the offender was under age 18 the Board shall hold a hearing parole on the murder sentence

11

after the offender has served 25 years on the murder sentence, if the offender requests it, and "shall consider" enumerated factors listed in that statute and another statute, Missouri Revised Statute § 565.033. S.J. Ex. 18, 19. The factors listed in Section 558.047 are set out in special worksheet the hearing panel takes into the hearing and are considered by the panel and the majority Board, and the factors in Section 565.033 are all incorporated into the prehearing report that is considered by the hearing panel and the majority Board. *Statement of Uncontroverted Material Facts*, at ¶¶ 9–22. Plaintiffs here received the procedures set out in Missouri law. There is no State law violation here.

## CONCLUSION

This Court should grant the motion for Defendants' summary judgment.

Respectfully submitted,

*/s/ Michael Spillane*
MICHAEL SPILLANE
Assistant Attorney General
Missouri Bar #40704
Andrew Crane
Assistant Attorney General
Missouri Bar #68017
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-2096 (Fax)
mike.spillane@ago.mo.gov
ATTORNEYS FOR DEFENDANTS

12

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system on this 12th day of June 2018. A copy of the foregoing document will be served upon counsel of record through the CM/ECF system.

*/s/ Michael Spillane*
MICHAEL SPILLANE

13