# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| NORMAN BROWN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:17-cv-04082-NKL |
| | ) |
| ANNE L. PRECYTHE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiffs Norman Brown, Ralph McElroy, Sidney Roberts, and Theron Roland are prisoners in the Missouri Department of Corrections ("MDOC") who are serving mandatory life without parole sentences for crimes committed when they were under 18 years of age. Doc. 65 (Amended Complaint), ¶¶ 5, 18-21. Each originally received a sentence of life without the possibility of parole. However, recent United States Supreme Court cases have held that a mandatory sentence of life without parole for a person who was under the age of 18 when he committed the offense violates the Eighth Amendment's prohibition on cruel and unusual punishment. In response, the Missouri legislature enacted a law permitting those mandatorily convicted to life without the possibility of parole for offenses they committed as juveniles to petition for parole after serving 25 years in prison. Each of the plaintiffs had served more than 25 years in prison when he petitioned for, and was denied, parole. Each was scheduled for reconsideration of the parole determination in five years.

Plaintiffs sue the Director of MDOC and members of the Missouri Board of Probation and Parole (the "Board"), seeking declaratory and injunctive relief. Plaintiffs allege that Missouri's parole policies and practices violate their rights to be free from cruel and unusual punishment and

their rights to due process under the Constitutions of both the United States and Missouri[1] and also fail to satisfy Missouri Revised Statutes Sections 558.047.5 and 565.033.2. Plaintiffs seek to represent a class consisting of individuals in the custody of MDOC who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense. The Court grants the motion for the reasons discussed below.

**I.     BACKGROUND**

The bar against cruel and unusual punishment in the Eighth Amendment to the U.S. Constitution prohibits subjecting an individual "to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). In a series of cases over the last eight years, the United States Supreme Court has concluded that the imposition of the sentence of life without parole on those who were under the age of eighteen when they committed an offense generally violates this prohibition. First, in *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that sentencing juvenile, non-homicide offenders to life without the possibility of parole violates the Eighth Amendment. Subsequently, in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that mandatory life without parole for juvenile homicide offenders, too, violates the Eighth Amendment. Finally, in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court clarified that *Miller's* holding constitutes substantive law that must be applied retroactively to offenders already facing mandatory life in prison. The Supreme Court explained that a state need not guarantee freedom to the juvenile offender, but the sentence must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Miller*, 567 U.S. at 479 (quoting

---

[1] Plaintiffs bring the constitutional claims under 42 U.S.C. § 1983, the Fourteenth and Eighth Amendments to the United States Constitution, and Article I, Sections 10 and 21, of the Missouri Constitution.

*Graham*, 560 U.S. at 75).

The Supreme Court noted that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.*, at 736. However, the Supreme Court noted that "given . . . children's diminished culpability and heightened capacity for change, . . . appropriate occasions for sentencing juveniles to this harshest possible penalty" are supposed to "be uncommon." *Miller*, 567 U.S. at 479.

After *Montgomery*, the Missouri legislature amended state law to permit those who were sentenced to mandatory life without parole for offenses committed when they were juveniles to petition for a review of their sentence after serving 25 years in prison. Mo. Rev. Stat. § 558.047. The amended law provides, in relevant part:

> Any person sentenced to a term of imprisonment for life without eligibility for parole before August 28, 2016, who was under eighteen years of age at the time of the commission of the offense or offenses, may submit to the parole board a petition for a review of his or her sentence . . . after serving twenty-five years of incarceration on the sentence of life without parole.

Mo. Rev. Stat. § 558.047.1.1.

The statute requires the Board to hold a hearing to determine whether parole is appropriate. *See* Mo. Rev. Stat. § 558.047.4. It also enumerates factors that the Board "shall consider":

> (1) Efforts made toward rehabilitation since the offense or offenses occurred, including participation in educational, vocational, or other programs during incarceration, when available;
>
> (2) The subsequent growth and increased maturity of the person since the offense or offenses occurred;
>
> (3) Evidence that the person has accepted accountability for the offense or offenses, except in cases where the person has maintained his or her innocence;
>
> (4) The person's institutional record during incarceration; and
>
> (5) Whether the person remains the same risk to society as he or

she did at the time of the initial sentencing.

Mo. Rev. Stat. § 558.047.5. The statute also incorporates by reference the following additional factors that the Board *must* consider (*see id.*):

> (1) The nature and circumstances of the offense committed by the defendant;
>
> (2) The degree of the defendant's culpability in light of his or her age and role in the offense;
>
> (3) The defendant's age, maturity, intellectual capacity, and mental and emotional health and development at the time of the offense;
>
> (4) The defendant's background, including his or her family, home, and community environment;
>
> (5) The likelihood for rehabilitation of the defendant;
>
> (6) The extent of the defendant's participation in the offense;
>
> (7) The effect of familial pressure or peer pressure on the defendant's actions;
>
> (8) The nature and extent of the defendant's prior criminal history, including whether the offense was committed by a person with a prior record of conviction for murder in the first degree, or one or more serious assaultive criminal convictions;
>
> (9) The effect of characteristics attributable to the defendant's youth on the defendant's judgment; and
>
> (10) A statement by the victim or the victim's family member as provided by [other specified statutes].

Mo. Rev. Stat. § 565.033.2.

Plaintiffs allege that Defendants have not fully and properly implemented this change in the law, and that Defendants' policies, procedures, and customs fail to provide the constitutionally required meaningful and realistic opportunity for release upon demonstrated maturity and rehabilitation. Plaintiffs have provided testimony from Board members and other agents and affiliates of Defendants that indicates that all members of the proposed class are subject to the

4

same parole review process, which is similar to the parole process for all other parole-eligible inmates. *See* Doc. 104-3 (Transcript of Deposition of former Board Operations Director Kelly Dills), at 110:5-25 ("I don't believe that it is—other than the additional elements—that it's substantially different from any other parole consideration hearing."); Doc. 104-4 (Transcript of Deposition of lead parole analyst Steve Mueller), at 86:21-87:2 ("There are no specific juvenile life without policies. The policies that institutional parole officers would be using are those that would be related to parole consideration hearings."); Doc. 104-5 (Transcript of Deposition of former Chairman Ellis McSwain), at 105:6-20 (testifying that, although SB 590 made a certain class of inmates eligible for parole consideration, "I don't believe that we initiated some new process by which we conducted hearings."); Doc. 65-3.

There is evidence that the same forms and processes are used for parole review of all members of the proposed class. An Institutional Parole Officer ("IPO") testified that she conducts the same prep work for pre-hearing interviews with inmates, uses the same worksheet for all pre-hearing interviews of inmates serving mandatory life-without-parole sentences for offenses committed when the inmates were under 18 years of age ("JLWOP"), and prepares a pre-hearing report in each case. Doc. 104-8 (Transcript of Deposition of Jessica Bliesath, Vol. I), at 21:3-26:5. These pre-hearing reports follow the same outline, as dictated by Board policy and procedure. Doc. 104-9 (Transcript of Deposition of Jessica Bliesath, Vol. II), at 24:17-25:1 ("Q. And you follow the same format for every prehearing report you do regardless of whether the inmate is serving juvenile life without parole or not, correct? A. Correct."); Doc. 104-7 (Chairman Jones testifying that pre-hearing reports follow a standard and consistent order and outline, and the reports are used to run the parole hearings). The Defendants use the same forms to indicate their vote for all JLWOP hearings. Doc. 104-4 (Mueller Depo. Tr.), at 184:5-187:18; Doc. 104-5

5

(McSwain Depo. Tr.), at 133:19-134:24. All Proposed Class members are informed of their parole decisions on the same form, with boilerplate language supporting the basis for the decisions. Doc. 104-5 (McSwain Depo. Tr.), at 202:6-9; Doc. 65-7; Doc. 65-10.

Defendants do not use any special risk assessment tools or objective guidelines in their decision-making for any member of the proposed class. Doc. 104-8 (Bliesath Depo. Tr., Vol. I), at 35:5-20; Doc. 104-9 (Bliesath Depo. Tr., Vol. II), at 26:8-10; Doc. 104-4 (Mueller Depo. Tr.), at 87:3-25. All members of the proposed class are prohibited from seeing the worksheet used to generate their pre-hearing report, the pre-hearing report itself, and any other part of their parole file. Doc. 104-3 (Dills Depo. Tr.), at 87:17-19; Doc. 104-10; Doc. 65-4; Doc. 65-5; *see also* Doc. 104-7 (Jones Depo. Tr.), at 53:16-24. Members of the proposed class thus do not know what evidence is presented against their request for parole release. Each member of the proposed class is permitted to have only one delegate present at the parole hearing. Doc. 104-4 (Mueller Depo. Tr.), at 190:16-19; Doc. 104-7 (Transcript of Deposition of Chairman Kenny Jones), at 49:17-19. Finally, despite the fact that the parole decisions are made by a majority of the Board, a panel consisting of only a subset of the Board conducts parole hearings. Doc. 104-5 (McSwain Depo. Tr.), at 127:20-24; Doc. 104-6, at P6-6.1. Members of the proposed class therefore do not have the opportunity to speak personally with all of those deciding their fate.

### A. Plaintiffs

Each Plaintiff has served over 25 years in prison. Norman Brown allegedly is a "model inmate" who has completed "thousands of hours of restorative justice programs" and who serves as a prison hospice worker and helps to run a "Puppies for Parole" dog training program. Doc. 65, ¶ 130. Mr. Brown had a parole hearing in May 2017, but his delegate, his attorney, was prohibited from bringing pen and paper into the hearing. *Id.*, ¶ 133. Mr. Brown "offered his deepest

6

Case 2:17-cv-04082-NKL   Document 140   Filed 06/25/18   Page 6 of 18

apologies, regrets, and condolences" to the victim, but both Mr. Brown and his attorney were told not to look at her. *Id.*, ¶¶ 134-36, 134. The victim was permitted to read a 12-page statement and offer any factual assertions, feelings, and opinions about the law that she wished. *Id.*, ¶ 136. She told the Board that the *Miller* decision was wrong and should not be followed. *Id.*, ¶ 137. Mr. Brown's attorney was not permitted to respond to anything the victim said. *Id.* The victim also apparently had been given non-public information about Mr. Brown. *Id.*, ¶ 139. The prosecutor, like the victim, was permitted to speak freely and to present any information he wished, including a new crime scene diagram he had created that was never shown to Mr. Brown. *Id.*, ¶ 140. In contrast, Mr. Brown's attorney was permitted only to speak about support that she might provide Mr. Brown upon his release. *Id.*, ¶ 142. Two days after the hearing, Mr. Brown received a notice of denial that cited as the sole basis the seriousness of the offense.

Ralph McElroy alleges that, while serving over 30 years of his original sentence, he completed a GED and earned numerous training certificates. *Id.*, ¶ 148. He has been employed as a caretaker in the Enhanced Care Unit. *Id.* He had a parole hearing in December 2016, at which he was permitted only one delegate. *Id.*, ¶ 149. The delegate, his sister, sent letters to the Board prior to the hearing. *Id.*, ¶ 150. At the hearing, she explained his "extensive home plan which included a responsible fiancé, a place to live, and a potential job." *Id.*, ¶ 150. Approximately five weeks later, Mr. McElroy received a notice of denial citing just two reasons for the denial: (1) that release would depreciate the seriousness of the offense based on the circumstances of the offense, and (2) the risk of Mr. McElroy's later violating the law due to poor institutional adjustment. *Id.*, ¶ 152. The denial notice stated that the decision was not appealable. *Id.*, ¶ 153. Mr. McElroy is scheduled for reconsideration in December 2021. *Id.*, ¶ 152.

Sidney Roberts alleges that he has served over 28 years of his original sentence. *Id.*, ¶ 154.

7

He has improved himself through completion of courses, has maintained a steady work history, and has several letters of support from supervisors who commend his industriousness and good character. *Id.*, ¶ 155. He received the vast majority of his conduct violations while in his 20s, and he has not received a single conduct violation in nearly eight years. *Id.*, ¶ 156. At his March 2017 parole hearing, he was prevented from having both counsel and a delegate present, and accordingly, only his mother attended the hearing. *Id.*, ¶ 158. At the hearing, defendant McSwain "grilled Mr. Roberts about the circumstances of the crime until Mr. Roberts broke down, sobbing." *Id.*, ¶ 159. A month later, the Board denied Mr. Roberts' request for parole, citing only the circumstances of the offense. *Id.*, ¶ 160. Mr. Roberts' IPO Jessica Bliesath had told him before the hearing that the Board could not deny parole based solely on the circumstances of the offense. When Mr. Roberts asked her about the denial notice he had received, she responded, "I can assure you it is not the sole reason you received a reconsideration hearing verses [*sic*] a release date." *Id.*, ¶ 103; Doc. 65-6. The denial notice stated that the decision was not appealable. Doc. 65, ¶ 161. Mr. Roberts is scheduled for reconsideration in March 2021.

Theron "Pete" Roland has served over 29 years of his original sentence. *Id.*, ¶ 162. He has "an exceptional institutional record," having had no conduct violations in about 15 years, and no more than 14 conduct violations during his 30 years in prison. *Id.*, ¶ 163. At his January 2017 parole hearing, he was permitted only one delegate. *Id.*, ¶ 164. When his delegate delivered a statement, the Board cut her off and directed her to speak only to his home plan. *Id.*, ¶ 165. Defendant Rucker, the only Board member at the hearing, admitted on the record that he had not read Mr. Roland's file. *Id.*, ¶ 166. Four weeks later, the Board denied Mr. Roland's request for parole, citing the circumstances of the offense. *Id.*, ¶ 167. The notice stated that the decision was not appealable. *Id.*, ¶ 168. Mr. Roland is scheduled for reconsideration in January 2022. *Id.*, ¶

167.

B. The Proposed Class

Plaintiffs seek certification of a class of similarly situated individuals in the custody of the MDOC, defined as:

> Individuals in the custody of the Missouri Department of Corrections who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense.

Doc. 103, at 1.

Plaintiffs assert five claims on behalf of themselves and the putative class: (1) cruel and unusual punishment in violation of the Eighth Amendment; (2) deprivation of due process in violation of the Fourteenth Amendment; (3) cruel and unusual punishment in violation of Article I, Section 21 of the Missouri Constitution; (4) deprivation of due process in violation of Article I, Section 10 of the Missouri Constitution; and (5) a request for declaratory judgment regarding whether Defendants are satisfying the requirements of Sections 558.047.5 and 565.033.2 of the Missouri Revised Statutes. Doc. 65, at 37-38. Specifically, Plaintiffs claim that the Board's policies, procedures, and customs fail to provide the putative class with a realistic and meaningful opportunity for release based on demonstrated maturity and rehabilitation, and fail to comply with Mo. Rev. Stat. §§ 558.047.5 and 565.033.2. Plaintiffs seek not only declaratory relief, but also an injunction ordering Defendants to formulate and implement policies, procedures, and customs for JLWOP parole reviews that ensure a realistic and meaningful opportunity for release based on demonstrated maturity, as well as additional injunctions, as appropriate, to prevent the future deprivation of the rights of Plaintiffs and members of the putative class. Doc. 65, at 38-39. Plaintiffs also request new hearings for those who have been provided a parole review under the Board's alleged unconstitutional policies, procedures, and customs. *Id.*, at 39.

9

## II.  DISCUSSION

### A.  Class Certification Standard

Under Federal Rule of Civil Procedure 23, a motion for class certification involves a two-part analysis.  First, under Rule 23(a), the proposed class must satisfy the requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).  Second, the proposed class must meet at least one of the three requirements of Rule 23(b).  *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013).

The burden of showing that the class should be certified rests on Plaintiffs.  *See Luiken,* 705 F.3d at 372.  They will meet this burden only if, "after a rigorous analysis," the Court is convinced that the Rule 23 requirements are satisfied.  *Comcast,* 133 S. Ct. at 1432 (quotation marks and citation omitted).  The Court has broad discretion in deciding whether class certification is appropriate.  *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski,* 678 F.3d 640, 645 (8th Cir. 2012) (citation omitted).

In deciding a class certification motion, the Court may consider "[m]erits questions ... only to the extent[ ]that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  The Court's inquiry on a motion for class certification therefore is "tentative," "preliminary," and "limited."  *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

### B.  Rule 23(a)

#### i.  Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous to render joinder of all members impracticable.  In assessing whether the numerosity requirement has been met, courts

10

examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982). The geographic location of class members may also be relevant. *See Darling v. Bowen*, 685 F. Supp. 1125, 1127 (W.D. Mo. 1988) (relying in part on geographic dispersion of class members in finding impracticability).

Plaintiffs have provided evidence that the Proposed Class consists of 95 individuals. Doc. 104-1 (July 7, 2017 list of "[o]ffenders under 18 at time of offense and serving a life no parole sentence"). Joinder of 95 individuals would be impracticable and also waste judicial resources. *Vernon Gries v. Standard Ready Mix Concrete, L.L.C.*, No. C07-4013-MWB, 2009 WL 427281, at *6 (N.D. Iowa Feb. 20, 2009) (finding 91-person class "sufficiently large to make joinder impracticable in this case"). Plaintiffs are incarcerated at various institutions throughout the state of Missouri. The putative class members have been incarcerated for their entire adult lives and thus often are indigent and without the financial resources required to retain counsel to address their claims individually. Given these considerations and the nature of the suit, the Court finds that the numerosity requirement has been satisfied.[2] *See Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (affirming certification of class consisting of twenty plaintiffs because of, *inter alia*, geographic and logistical difficulties that would arise if the plaintiffs were to bring claims individually).

### ii. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

---

[2] The fact that the identities and locations of the members of the putative class are known does not warrant denial of class certification, particularly because one of the preliminary requirements for certification is that the class be "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted).

R. Civ. P. 23(a)(2). Plaintiffs must show that their class claims "depend upon a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011). Commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, No. 13-206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton,* 688 F.2d at 561); *see also Ebert v. General Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) ("[A] single common question 'will do' for purposes of Rule 23(a)(2).") (citing *Dukes*, 131 S. Ct. at 2556). Commonality is easily satisfied in most cases. *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 (S.D. Iowa 2009) ("The burden imposed by [the commonality] requirement is light and easily met in most cases.") (citing *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); Newberg on Class Actions § 3:10 (4th ed.)).

Commonality is satisfied here because Plaintiffs' claims present common questions of law and fact regarding Defendants' policies, practices, and customs related to parole consideration for the Proposed Class Members. Plaintiffs do not challenge the fact or duration of their confinement. Doc. 65, ¶ 15. Instead, they challenge the policies, practices, and customs that govern parole consideration for them and others similarly situated and how they must be applied in light of the Supreme Court's mandate in *Miller* and *Montgomery*. Whether Defendants maintain a policy or custom of conducting parole review hearings for the Proposed Class in a manner that prevents Plaintiffs from obtaining a realistic and meaningful opportunity for release based on demonstrated

12

rehabilitation, in violation of state and federal due process requirements and prohibitions on cruel and unusual punishment (*see id.*, ¶ 174), is a question of law and fact common to all members of the proposed class.

Defendants argue that commonality does not exist because many class members are years away from having parole hearings, and others are pursuing resentencing in state court litigation. But according to Plaintiffs, the nature of the parole review afforded to those serving JLWOP sentences will remain the same for members of the proposed class regardless of such differences in procedural posture. Every member of the proposed class will be subjected to Defendants' policies, practices, and customs.[3] Plaintiffs have submitted evidence showing that these policies, practices, and customs are uniformly enforced across the Proposed Class. *See, e.g.*, Doc. 104-3 (Dills Depo. Tr.), at 109:4-110:25 (explaining, as to parole review under Senate Bill 590, "I don't believe that it is—other than the additional elements—that it's substantially different from any other parole consideration hearing"); Doc. 104-4 (Mueller Depo. Tr.), at 86:21-87:25 ("There are no specific juvenile life without policies. The policies that institutional parole officers would be using are those that would be related to parole consideration hearings."); Doc. 104-5 (McSwain Depo. Tr.), at 105:2-106:7 (testifying that, although SB 590 made a certain class of inmates eligible for parole consideration, "I don't believe that we initiated some new process by which we conducted hearings," and confirming that, to his knowledge, "that was the same process for every inmate who was now eligible under Senate Bill 590 for a parole hearing"); Doc. 104-6 (Procedure No. P6-6.1) (defining "Hearing Panel" as "A panel consisting of one Parole Board member and two hearing officers appointed by the Board who have decision making authority regarding parole

---

[3] Plaintiffs concede that if any member of the proposed class is resentenced, he or she will no longer be a member of the proposed class. Doc. 124, n.5.

13

considerations."); Doc. 104-4 (Mueller Depo. Tr.), at 190:16-19 (noting that inmates "can have one delegate" at parole hearing); Doc. 104-8 (Bliesath Depo. Tr., Vol. I), at 21:3-29:22 (institutional parole officer's testimony that she conducts the same preparatory work pre-hearing and completes the same worksheet for interviews with JLWOP inmates); Doc. 104-7 (Jones Depo. Tr.), at 49:2-54:13 (testifying that multiple people may appear on behalf of the victim, while inmate is permitted just one delegate, and agreeing that it would be important for an inmate to know what evidence the Board considered in making its determination, but acknowledging that the inmates are not given that information). In contrast, Defendants have not presented any evidence to suggest that the policies, practices, and customs applied to the named plaintiffs and other members of the putative class are not uniform.

On the record presented, the Court finds that the commonality requirement is satisfied. *See Paxton*, 688 F.2d at 561 (holding that commonality "may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated") (quotation marks and citation omitted); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (holding that question of "whether the specified statewide policies and practices to which they are all subjected . . . . expose them to a substantial risk of harm" was a common question "whose truth or falsity can be determined in one stroke"— "either each of the policies and practices is unlawful as to every inmate or it is not").

### iii. Typicality

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). In determining typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84

F.3d 1525, 1540 (8th Cir. 1996). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Plaintiffs' claims and the claims of the Proposed Class arise from the same course of conduct: Defendants' policies, practices, and customs surrounding their parole review for juvenile offenders serving mandatory LWOP sentences and who are eligible for a "review of their sentence" under Mo. Rev. Stat. §§ 558.047 and 565.033. Plaintiffs claim that these policies, practices, and customs deny them a meaningful opportunity for release based on demonstrated maturity and rehabilitation, and systematically violate their due process rights. They also claim that Defendants' policies, practices, and customs do not satisfy the requirements of Mo. Rev. Stat. §§ 558.047 and 565.033. These claims are the same as those that could be raised by any member of the Proposed Class, and all class members share the common alleged injury of being subjected to the policies.

Defendants argue that Plaintiffs' claims are not typical because certain members of the proposed class have sought resentencing from various courts. But so long as each member of the putative class is not resentenced, each is subject to the same policies and procedures with respect to parole under Mo. Rev. Stat. §§ 558.047 and 565.033.[4] Plaintiffs' claims and the claims of the Proposed Class thus arise from the same course of conduct and give rise to the same legal or remedial theory. *See Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932 (W.D. Mo. Nov. 8, 2012) (finding typicality where plaintiffs' Section 1983 claim was "based on the same policy and proposed conduct of Defendants" as the claims of other putative class members); *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) (finding typicality requirement

---

[4] As noted above, to the extent that a member of the proposed class is resentenced, he or she will no longer be a member of the proposed class.

satisfied where plaintiffs and the putative class members were subjected to the "same allegedly unlawful policies and conditions" and their claims were "all based on the same legal theories, the same arguments of unconstitutionality").

### iv. Adequacy

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 458 (W.D. Mo. 2004) (internal quotes omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

As a preliminary matter, the Constitutional and statutory issues presented are the same for every potential plaintiff, so the Plaintiffs' interests are substantively identical to those of the other potential class members. *See Wal-Mart,* 564 U.S. at 349, n. 5 (noting that the requirements of typicality and adequacy "tend to merge").

Defendants do not dispute that Plaintiffs' counsel can adequately represent the Proposed Class Members. Plaintiffs' counsel have extensive experience with complex litigation. One of Plaintiffs' attorneys has significant experience in class action litigation and the issues involved with class notice, class administration, and other relevant issues. The Court therefore finds that proposed class counsel is equipped to vigorously represent the plaintiffs in this action. The adequacy requirement is satisfied.

## C. Rule 23(b)

Finally, a class must satisfy at least one of the requirements of Rule 23(b). Here, Plaintiffs satisfy two independent subsections of Rule 23(b): 23(b)(1)(A) and 23(b)(2).

### i. Rule 23(b)(1)(A)

Rule 23(b)(1)(A) allows for certification of a class when not doing so would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike . . . ." *Amchem Prods.*, 521 U.S. at 614 (quotation marks and citation omitted).

This case concerns the policies, practices, and customs that the Board and its staff uniformly apply to every inmate serving a JLWOP sentence. Each member of the proposed class is entitled to relief under *Miller* and *Montgomery* and Senate Bill 590. Litigating the proposed class members' claims individually would present a risk of varying outcomes as to what standards of conduct should apply in a parole review for all individuals serving JLWOP sentences for offenses committed when they were under 18 years of age. Rule 23(b)(1)(A) therefore is satisfied.

Defendants argue that the Court should decline to certify the class because the injunctive relief Plaintiffs seek would benefit all members of the proposed class, even in the absence of class certification. However, Defendants themselves argue that the class is not cohesive. *See* Doc. 113, at 4. Further, Defendants have not agreed to treat any decision by this Court as binding with respect to all *Miller*-affected inmates. Because there is a risk that Defendants will not treat all inmates serving JLWOP sentences as being bound by any decision by the Court concerning the named plaintiffs' claims, class certification is appropriate.

## ii. Rule 23(b)(2)

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits.'" *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (citation omitted).

Plaintiffs allege that Defendants, applying policies and procedures uniformly across the class, "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Plaintiffs seek "final injunctive relief or corresponding declaratory relief . . . respecting the class as a whole." *Id*. Because "a single injunction or declaratory judgment would provide relief to each member of the class," Rule 23(b)(2) is satisfied. *Dukes*, 564 U.S. 338, 360.

## III. CONCLUSION

For the reasons discussed above, Plaintiffs' motion for class certification, Doc. 103, is GRANTED. The Court certifies a class of plaintiffs consisting of:

> Individuals in the custody of the Missouri Department of Corrections who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 25, 2018
Jefferson City, Missouri