**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| NORMAN BROWN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-4082 |
| | ) | |
| ANNE L. PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSTION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities ..................................................................................................... ii

Introduction ................................................................................................................ 1

Responses to Defendants' Statement of Uncontroverted Facts ..................................... 1

Argument ................................................................................................................... 21

    I.    This Court has already ruled that Plaintiffs have a liberty interest in a meaningful parole review, and Defendants provide no reason to reconsider that decision. ................................... 21

    II.    Defendants' argument that Plaintiffs "have had more process than they are constitutionally entitled to receive" is contradicted by due process jurisprudence and the uncontroverted facts. ................................................................................................ 24

    III.    Defendants are not entitled to summary judgment on Plaintiffs' Eighth Amendment and related state claim because Defendants are denying the Class Members a meaningful and realistic opportunity for release in contravention of Supreme Court precedent. ..................... 26

    IV.    Defendants are not entitled to judgment on Plaintiffs' declaratory judgment claim because the uncontroverted evidence proves Defendants are not complying with RSMo. § 558.047 or § 565.033.2 ..................................................................................... 28

Conclusion ................................................................................................................. 31

Case 2:17-cv-04082-NKL   Document 144   Filed 06/29/18   Page 2 of 36

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Alabama*, 136 S. Ct. 1796 (2016) .................................................................................. 30

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ................................................................................. 26

*Atwell v. State*, 197 So. 3d 1040 (Fla. 2016) ............................................................................... 24

*Board of Regents v. Roth*, 408 U.S. 564 (1972) .......................................................................... 25

*Candarini v. Attorney General of the United States*, 369 F.Supp. 1132 (E.D.N.Y.1974) ........... 27

*Cooper v. Missouri Bd. of Prob. & Parole*, 866 S.W.2d 135 (Mo. banc 1993) .......................... 27

*Craft v. Attorney General of the United States*, 379 F.Supp. 538 (M.D.Pa. 1974) .................... 27

*Diatchenko v. Dist. Attorney for Suffolk Dist.*, 1 N.E.3d 270 (Mass. 2013) ................................ 24

*Diatchenko v. Dist. Attorney for Suffolk Dist.*, 27 N.E.3d 349 (Mass. 2015) ....................... 24, 30

*Graham v. Florida*, 560 U.S. 48 (2010) ........................................................................... 22, 23, 29

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) ................................ 25

*Greiman v. Hodges*, 79 F. Supp. 3d 933 (S.D. Iowa 2015) ............................................. 23, 24, 29

*Hawkins v. New York State Dep't of Corr. & Cmty. Supervision*, 30 N.Y.S.3d 397 (N.Y. App. Div. 2016) .................................................................................................................................. 24

*Hayden v. Keller*, 134 F. Supp. 1000 (E.D. N.C. 2015) .............................................................. 23

*Lamar v. Micou*, 114 U.S. 218 (1885) .......................................................................................... 7

*Marshall v. Mitchell*, 57 F.3d 671 (8th Cir. 1995) ...................................................................... 21

*Maryland Restorative Justice Initiative v. Hogan*, ELH-16-1021, 2017 WL 467731 (D. Md. Feb. 3, 2017) ................................................................................................................................ 23, 24

*McIndoo v. Burnett*, 494 F.2d 1311 (8th Cir. 1974) ..................................................................... 7

*Montgomery v. Louisiana*, 577 U.S. ___, 136 S.Ct. 718 (2016) ................................................. 29

*Old Hickory Products Co., Ltd. v. Hickory Specialties, Inc.*, 366 F.Supp. 913 (D.Ga.1973) ........ 7

*Olds v. Norman*, No. 4:09CV-1782 CAS/TCM, 2013 WL 316017 (E.D. Mo. Jan. 8, 2013), *report and recommendation adopted,* No. 4:09-CV-1782 CAS, 2013 WL 315974 (E.D. Mo. Jan. 28, 2013) .......................................................................................................................................... 27

*Olim v. Wakinekona,* 461 U.S. 238 (1983) .................................................................................. 22

*Parker v. Corrothers*, 750 F.2d 653 (8th Cir. 1984) .................................................................. 26

*Proctor v. LeClaire*, 846 F.3d 597 (2d Cir. 2017) ........................................................ 26

*State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133 (Mo. 1995).................................... 22

*State v. Young*, 794 S.E.2d 274 (N.C. 2016)................................................................ 30

*Swarthout v. Cooke*, 131 S. Ct. 859 (2011) ................................................................ 26

*U.S. ex rel. Brown v. U.S. Bd. of Parole*, 443 F. Supp. 477 (M.D. Pa. 1977) .............. 27

*U.S. ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975)...................................... 27

*United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 U.S. 925 (2d Cir.), *vacated as moot*, 419 U.S. 1015 (1974)....................................................... 27

*Wershe v. Combs*, 1:12-cv-1375, 2016 WL 1253036 (W.D. Mich. Mar. 31, 2016) .................. 23

*Wilkinson v. Austin*, 545 U.S. 209 (2005).................................................................... 22

*Williams v. Missouri Bd. of Prob. & Parole*, 661 F.2d 697 (8th Cir. 1981)................................ 27

**Statutes**

RSMo. § 217.692.4 ........................................................................................................ 22

RSMo. § 558.047 ................................................................................................... passim

RSMo. § 565.033 ................................................................................................... passim

**Regulations**

14 CSR § 80-2.010............................................................................................................. 2

**Other Authorities**

Sarah French Russell, *The Role of the Crime at Juvenile Parole Hearings: A Response to Beth Caldwell's* Creating Meaningful Opportunities for Release, 41 Harbinger 227 (Dec. 8, 2016)28

## INTRODUCTION

Defendants' motion for summary judgment is not supported by law or undisputed facts. Defendants argue that they are complying with Missouri law, and that Plaintiffs have received all the process to which they are entitled. In truth, Defendants fail to provide even the most basic due process protections to the Class Members, deny a meaningful and realistic opportunity for release in contravention of the Eighth Amendment, and do not comply with the statutory obligations created by Senate Bill 590 ("SB 590"). The evidence adduced in this case demonstrates that without question. Therefore, Defendants' motion for summary judgment should be denied.

## RESPONSES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

1.      The plaintiffs in this case are four offenders who were formerly sentenced to life without parole for homicides they committed before age 18, but they are now eligible for parole consideration on their murder sentences after serving 25 years on the murder sentences. Document 64 at 1.

**RESPONSE:** It is uncontroverted that the four named plaintiffs in this case are individuals serving life without parole sentences for first-degree murder convictions they are alleged to have committed before age 18. *See* Second Am. Compl. (Doc. #65), at ¶¶ 128, 147, 154, and 162. Other facts in this First Paragraph are in dispute, including the fact that these plaintiffs committed the crimes for which they are incarcerated. ███████████ has always maintained his innocence. *See* Doc. #134-16 at 12:19-13:6. And Norman Brown was not even armed when his co-defendant shot and killed Stephen Honickman and shot and injured Florence Honickman. *See* Second Am. Compl. (Doc. #65), at ¶¶ 128-129.

1

2.     All four plaintiffs have had parole hearings at which they presented evidence. Document 64 at 1; S.J. Ex. 14–17.

**RESPONSE:** It is uncontroverted that all four plaintiffs had parole hearings during which they were interviewed by a hearing panel. The extent to which they were permitted to present any "evidence" is in dispute. For example, Plaintiffs were only permitted one delegate. *See* Doc. #134-5 at 242:2-13; Doc. #134-11 at 25:14-24; Second Am. Compl. (Doc. #65) at ¶ 81; Defs.' Answer to Second Am. Compl. (Doc. #73) at ¶ 81. Their delegates were cut off from speaking about anything other than plaintiffs' home plans. *Compare* Doc. #134-5 at 242:6-18 and 14 CSR § 80-2.010(5)(A)(1) *with* Apr. 27, 2017 letter from A. Precythe (Doc. #65-3); *see also* Doc. #134-18 at 42:14-20. Defendants do not have any formal mechanism in place through which Class Members can submit evidence of mitigating factors of youth—at their hearings or otherwise. *See* Doc. #134-3 at 86:24-87:7; Doc. #134-9 at 27:17-29:20; Doc. #134-10 at 103:14-106:18; Bluebook, available at http://doc.mo.gov/Documents/prob/Blue-Book.pdf; Expert Report of Heidi Rummel (Doc. #138-15) ("Rummel Report").[1] Furthermore, ███████ was not given an opportunity to make a statement on his own behalf. *See*, *generally*, Doc. #134-18.

3.     As of May 2018, the Board of Probation and Parole has held hearings for 30 offenders formerly serving life without parole sentences for first-degree murders committed while under age 18. S.J. Ex. 22. Of those offenders, four have been scheduled for release dates following their first parole hearing. S.J. Ex. 22. Others have received dates for reconsideration hearings, or have been ineligible for parole for reasons such as really being over 18 at the time of the offense, or having consecutive sentences that push parole eligibility into the future, or not yet being eligible under the statute. S.J. Exhibit 22; S.J. Ex. 3 at 274–78.

---

[1] Defendants have not provided any expert opinion to rebut Professor Rummel's expert opinion.

**RESPONSE:** It is uncontroverted that four individuals have received release dates following their first parole hearing. It is uncontroverted that the Board has scheduled reconsideration hearings for other Class Members, including due to parole staff's calculation of minimum prison terms. It is uncontroverted that the Board mistakenly held a parole hearing for someone who was not legally a juvenile at the time of the underlying offense.

Plaintiffs dispute Defendants' interpretation of the statute with respect to consecutive sentences, and therefore disagree with Defendants' assertion that certain individuals received reconsideration hearings because of "consecutive sentences that push parole eligibility into the future, or not yet being eligible under the statute." For example, the Board told Donald Steward he would have to serve 50 years before he could be parole-eligible due to a consecutive sentence. *See* Donald Steward Parole Notice, attached hereto as **Exhibit 1**. They also claim Norman Brown is not parole-eligible. *See* ¶ 15, *infra*. These interpretations of the law fail to comply with the spirit of SB 590 or the Missouri or United States Constitutions.

The remaining facts in this paragraph are controverted. The spreadsheet attached as Exhibit 22 does not reflect that 30 SB 590 hearings were held for Class Members, nor does it accurately reflect the outcomes of any such hearings as of the date of Defendants' motion for summary judgment. Instead, it appears to reflect that only 28 hearings were held as of May 2018 (Bradley Houston, Michael Vincent, Bryan Seddens, Donald Steward, Ralph McElroy, Jonathan Collier, James Hardy, Edward Ramsey, Jerry Goforth, Antonio Richardson, Douglas Brewster, Curtis Stewart, Theron Roland, Jason Minks, Tino Wedlow, Kevin Bradshaw, Sidney Roberts, Liddell Wilson, Daryll McNair, Aaron Frazier, Norman Brown, Jeromy Lay, Ike Crawford, Michael McRoberts, Edward Anderson, Ronald Clements, Lisa Harris, and Tommy Thomas). The

3

spreadsheet also fails to reflect the fact that Lisa Harris was denied parole and received a three-year setback. *See* Lisa Harris Parole Denial Notice (Doc. #138-25).

Furthermore, the Class Members are not "formerly serving life without parole sentences," and the evidence cited does not support that fact. The Class Members' sentences have not changed—the continue to serve LWOP sentences.

4.      All parole-eligible offenders, like Plaintiffs, receive a hearing before a three-person panel which includes one Parole Board member. Each offender's case case [sic] is then reviewed by majority of the Parole Board with members considering the case in turn until a majority decision is reached. S.J. Ex. 3 at 185–88, 216–18, 235, 270–74; S.J. Ex. 8 at 102, S.J. Ex. 14–17.

**RESPONSE:** It is uncontroverted that SB 590 parole hearings are conducted by a three-person panel including only one Board member, and that the decisions are majority Board decisions. The facts in this paragraph are otherwise controverted. First, the issue of whether the Class Members are parole-eligible is not uncontroverted in light of Defendants' calculations of minimum prison time. *See* ¶ 3 and Response thereto, *supra*. Defendants' own Exhibit 23 calls into question whether Norman Brown is actually parole-eligible, and ¶ 15 of their own statement of facts, *infra*, asserts that he is not parole-eligible.

Second, while it is unclear what Defendants mean by "members considering the case," the evidence shows voting Board members do not generally review the entire parole file before voting. *See* Doc. #134-14 at 50:2-53:1, 72:12-13, 160:1-169:17, and 251:14-253:6; Doc. #134-4 at 69:22-71:10; Doc. #134-5 at 142:15-20; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 65-75.

4

5.     Under Missouri law and Board rules, the votes of panel members and Board members are confidential, as are the contents of an offender's parole file. Ex. 4 at 86–90. S.J. Ex. 20.

**RESPONSE:** This is not a fact, but a conclusion of law. Plaintiffs do not contest the fact that Defendants have taken the position that the Board and hearing panel votes, and the contents of an inmate's entire parole file, are confidential. Plaintiffs' counsel have asserted repeated objections to Defendants' confidentiality designations of this information and these materials. Missouri Statute provides only that such materials *may* be closed—not that they *shall* be closed. RSMo. § 217.670.5 ("Notwithstanding any other provision of law, any meeting, record, or vote, of proceedings involving probation, parole, or pardon, may be a closed meeting, closed record, or closed vote."). Further, while RSMo. § 549.500 provides that "[a]ll documents prepared or obtained in the discharge of official duties by any member or employee of the board of probation and parole shall be privileged and shall not be disclosed directly or indirectly to anyone other than members of the board and other authorized employees of the department pursuant to section 217.075," that same provision allows the Board, in its discretion, to "permit the inspection of the report or parts thereof by the [inmate] or his [or her] attorney or other persons having a proper interest therein." Finally, Plaintiffs have argued that the Class Members have a due process right to access materials in their parole file. *See* Doc. #122.

6.     The Chairman of the Parole Board considers confidentiality necessary to receive the most accurate information possible and to limit improper influence on decisions. Ex. 4 at 86–90; S.J. Ex. 20.

**RESPONSE:** Plaintiffs do not contest the fact that Chairman Jones considers confidentiality necessary to receive accurate information and limit improper influence on Board decisions. Plaintiffs do contest the validity of this concern.

7.      Overall, roughly 95 percent of Missouri Offenders who are eligible for parole or conditional release receive early release through parole or conditional release rather than completing their sentences. S.J. Ex. 7a at 84; S.J. Ex. 21.

**RESPONSE:** Uncontroverted, but irrelevant. This statistic says nothing about the rate at which the Class Members are being granted parole release or, more important, the point at which that release is occurring. Plaintiffs and the class they seek to represent are all juvenile offenders who are constitutionally entitled to a meaningful and realistic opportunity for release. The fact that approximately 95% of all inmates—regardless of age, sentence(s), or years served—are released at some point prior to the expiration of their sentence is irrelevant to whether Class Members are being denied a meaningful and realistic opportunity for release.

8.      Plaintiffs allege that Missouri parole procedures for offenders formerly sentenced to life without parole for murders committed while under age 18 violate the due process requirements and the bans on cruel and unusual punishment of the United States and Missouri Constitutions. Document 65 at 36–37. And they allege Missouri does not in practice follow the Missouri statutes passed to provide that special factors are considered in the cases of offenders originally sentenced to life without parole for murders committed under age 18. Document 65 at 37–38.

**RESPONSE:** Plaintiffs' contest this characterization of Plaintiffs' claims. First, Plaintiffs contest that they and the Class Members all are serving LWOP sentences for murders they committed. ████████ has always maintained his innocence. *See* Response to ¶ 1, *supra*. And

Norman Brown was not even armed when his co-defendant shot and killed Stephen Honickman and shot and injured Florence Honickman. *See id.* Instead, Plaintiffs and this Court have defined the Proposed Class as "[i]ndividuals[2] in the custody of MDOC who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense." Second Am. Compl. (Doc. #65) at ¶ 170; Doc. #140 at 18.

Second, Plaintiffs agree that they are asserting claims for violations of due process and the bans on cruel and unusual punishment of the United States and Missouri Constitutions, and for declaratory judgment that Defendants are not complying with Missouri statute regarding the Proposed Class. Plaintiffs contest that they allege only the Board's *procedures* violate these provisions of the Federal and State constitutions. Plaintiffs specifically allege that Defendants' "policies, procedures, and customs" are unconstitutional and fail to comply with Missouri statute. *See, e.g.,* Second Am. Compl. at ¶¶ 113, 177, 181, and Request for Relief.

9.    Missouri Revised Statute § 558.047, effective July 13, 2016, provides that offenders sentenced to life without parole for murders committed before August 28, 2016 while the offender was under age 18 may petition for parole on the murder sentence after serving 25 years on that sentence. S.J. Ex. 18.

**RESPONSE:** This is not a fact, but a conclusion of law. The language of RSMo. § 558.047 speaks for itself, and Plaintiffs ask that the Court take judicial notice of the statute itself.[3] Plaintiffs

---

[2] Plaintiffs intentionally do not use the word "offenders."

[3] *See McIndoo v. Burnett*, 494 F.2d 1311, 1313 (8th Cir. 1974) ("the law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof") (quoting *Lamar v. Micou*, 114 U.S. 218, 223 (1885); *Old Hickory Products Co., Ltd. v. Hickory Specialties, Inc.*, 366 F.Supp. 913, 916 (D.Ga.1973)).

7

do not contest the fact that this law became effective July 13, 2016. Plaintiffs contest Defendants' assertion that the law states Class Members "may petition for parole on the murder sentence after serving 25 years on that sentence." In truth, the law states that such persons "may submit to the parole board a petition for a review of his or her sentence, regardless of whether the case is final for purposes of appeal, after serving twenty-five years of incarceration on the sentence of life without parole." RSMo. § 558.047.1(1).

10.     Missouri Revised Statute § 558.047 provides five factors that it indicates the Parole Board shall consider in addition to factors listed in Missouri Revised Statute § 565.033. Those factors are: 1) efforts toward rehabilitation; 2) subsequent growth and increased maturity; 3) evidence that the offender has accepted accountability for the crime except in cases where he has maintained his innocence; 4) the offender's institutional record during incarceration; and 5) whether the person remains the same risk to society. S.J. Ex. 18.

**RESPONSE:** This is not a fact, but a conclusion of law. The language of RSMo. § 558.047 speaks for itself, and Plaintiffs ask that the Court take judicial notice of the statute itself. *See* n3, *supra*.

11.     Missouri Revised Statute § 565.033.2 lists 10 factors to be considered about offenders who committed first-degree murder before age 18. Those are: 1) the nature and circumstances of the offense; 2) the degree of culpability in light of age and role in offense; 3) age, maturity, intellectual capacity, mental and emotional health and development at the time of the offense; 4) background including family, income and community environment; 5) the likelihood of rehabilitation; 6) the extent of participation in the offense; 7) the extent of familial pressure or peer pressure; 8) nature and extent of prior criminal history; 9) the effect of

8

Case 2:17-cv-04082-NKL   Document 144   Filed 06/29/18   Page 12 of 36

characteristics attributable to the defendant's youth on his judgment; and 10) a statement by the victim or victim's family members. S.J. Ex. 19.

**RESPONSE:** This is not a fact, but a conclusion of law. The language of RSMo. § 565.033.2 speaks for itself, and Plaintiffs ask that the Court take judicial notice of the statute itself. *See* n3, *supra*. Plaintiffs contest Defendants' characterization of Section 565.033.2(4), which states the trier of fact shall consider "[t]he defendant's background, including his or her family, home, and community environment"—not "family, income and community environment," as Defendants state.

12.     The factors in Missouri Revised Statute § 565.033.2 are incorporated into a pre-hearing report created by an institutional parole officer who interviews the offender and reviews documents about his case. The report is a principal document considered by the hearing panel and the majority Board in considering the case. So, the hearing panel and the Board consider the factors in §565.033. S.J. Ex 3 at 125-28, 161, 172–74, 177; S.J. Ex. 4 at 92–93;117–118; S.J. Ex. 5 at 230–44; S.J. Ex. 7 at 19–36, 41–86; S.J. Ex. 7a at 5–52; S.J. Ex. 8 at 70–72, 108–110, 140–47; S.J. Ex. 9 at 46– 79; S.J. Ex. 10 at 47; S.J. Ex. 11 38–56; S.J. Ex. 13 65–80; S.J. Ex. 13 at 145–179.

**RESPONSE:** It is uncontroverted that the pre-hearing report is a principal document considered by the hearing panel. The remaining facts in this paragraph are controverted.

The evidence does not clearly demonstrate that all ten factors set forth in RSMo. § 565.033.2 are incorporated into Class Members' pre-hearing reports. The worksheets used by institutional parole officers ("IPOs") to prepare the pre-hearing reports do not expressly require that the IPO discuss with the inmate: (a) the inmate's subsequent growth and increased maturity since the underlying offense(s) occurred (RSMo. § 558.047.5(2)); (b) whether the inmate remains the same risk to society as they did at the time of the initial sentencing (RSMo. § 558.047.5(5));

9

or (c) the effect of characteristics attributable to the inmate's youth on their judgment (RSMo. § 565.033.2(9). *See* Doc. #134-1; Doc. #134-9 at 146:13-17; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 25.

The uncontroverted facts demonstrate that not all the Section 565.033.2 factors are incorporated into Plaintiffs' pre-hearing reports. Sidney Roberts' pre-hearing report ██████ ███████████████████████████████████. *See* Doc. #134-8 at 44:22-11; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 37. Mr. Roberts' pre-hearing report ████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████. *See* Doc. #134-7 at 74:14-22; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 42. Only a fraction of Pete Roland's pre-hearing report ██████████████████████████. *See* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 38. Norman Brown's pre-hearing report ██████████████████████████████████████████ ███████████████████████████████████████████. *Id.* at ¶ 39. Mr. Brown's pre-hearing report notes ████████████████████████ ███████████████████████████████████████████. *Id.* at ¶ 40. Ralph McElroy's pre-hearing report ██████████████████████████████ ███████████████████████████████. *See id.* at ¶ 41.

Not one of Plaintiffs' parole hearings included discussion and consideration of all ten factors set forth in RSMo. § 565.033.2. During ███████████hearing, for example, there were no questions concerning peer pressure or familial pressure, past abuse, ██████████home life at the time of the offense, ████████████ability to resist specific crime settings, the extent of

autonomous choice on ████████ decision-making, ████████ intellectual capacity at the time of the offense, or other characteristics that made ████████ judgment different than that of adults. *See* Doc. #134-16. Similarly, during ████████ hearing, there were no questions concerning ████████ home life at the time of the offense, ████████ ability to resist specific crime settings, the extent of autonomous choice on ████████ decision-making, ████████ age or maturity at the time of the offense, ████████ intellectual capacity at the time of the offense, or other characteristics that made ████████ judgment different than that of adults. *See* Doc. #134-18. At none of Plaintiffs' parole hearings did the Hearing Panels ask any questions regarding the incompetencies associated with Plaintiffs' youth at the time of the underlying offenses. *See* Doc. # 134-15, 134-16, 134-17, and 134-18.

Furthermore, the documentation the hearing panel is supposed to complete for SB 590 parole hearings wholly omits the ten elements listed in RSMo. § 565.033.2. *Compare* Doc. #134-2 *with* RSMo. § 565.033.2; *see also* Doc. #134-12 at 102:9-16. Yet hearing panel members are under the impression that the factors listed in the Board Action Sheet documentation are the only factors they are required to consider when conducting parole reviews for the Proposed Class. *See* Doc. #134-12 at 25:13-16 and 50:5-18; Doc. #134-5 at 159:5-20 (testifying he likely did not ask ████████ about abuse he suffered as a child because it was not listed as one of the five questions in the BAS Supplement); Doc. #134-14 at 79:23-80:5 (testifying there is nothing in the parole file that deals specifically with the SB 590 factors other than the BAS Supplement). In sum, it is not uncontroverted that the Board considers the factors in Section 565.033. To the contrary, it is clear that they do not.

13.     The factors in Missouri Revised Statute § 558.047 are considered at the hearing and by the panel and by the Board, and a special page is added to the Board Action Sheet for comments

11

on those factors. S.J. Ex. 3 at 125– 28, 177, 182–85; S.J. Ex. 4 at 92–93, 117–118; S.J Ex. 5 at 48–49, 230–44, S.J. Ex. 8 at 154–56; S.J. Ex. 13 65–80, 116–117, 145–179.

**RESPONSE:** Plaintiffs do not contest that the Board uses a third page (the "BAS Supplement") to document evidence of the factors in RSMo. § 558.047. The facts in this paragraph are otherwise controverted. In truth, the undisputed evidence demonstrates that the Board is not considering all the factors delineated in RSMo. § 558.047 at parole hearings.

The worksheets used by IPOs to prepare the pre-hearing reports does not expressly require that the IPO discuss with the inmate: (a) the inmate's subsequent growth and increased maturity since the underlying offense(s) occurred (RSMo. § 558.047.5(2)); (b) whether the inmate remains the same risk to society as they did at the time of the initial sentencing (RSMo. § 558.047.5(5)); or (c) the effect of characteristics attributable to the inmate's youth on their judgment (RSMo. § 565.033.2(9). *See* Response to ¶ 12, *supra*. The uncontroverted facts demonstrate that not all the Section 558.047 factors are incorporated into Plaintiffs' pre-hearing reports. *Id*.

Not one of Plaintiffs' parole hearings included discussion and consideration of all factors set forth in RSMo. § 565.047. During ████████ hearing, for example, there were no questions concerning peer pressure or familial pressure, past abuse, ████████ home life at the time of the offense, ████████ ability to resist specific crime settings, the extent of autonomous choice on ████████ decision-making, ████████ s intellectual capacity at the time of the offense, or other characteristics that made ████████ judgment different than that of adults. Doc. #134-16. Similarly, during ████████ hearing, there were no questions concerning ████████ home life at the time of the offense, ████████ ability to resist specific crime settings, the extent of autonomous choice on ████████ decision-making, ████████ age or maturity at the time of the offense, ████████ intellectual capacity at the time of the offense, or other characteristics

that made ███████ judgment different than that of adults. Doc. #134-18. At none of Plaintiffs'

parole hearings did the Hearing Panels ask any questions regarding the incompetencies associated

with Plaintiffs' youth at the time of the underlying offenses. *See* Doc. # 134-15, 134-16, 134-17,

and 134-18. Notes on Plaintiffs' BAS Supplements are minimal, superficial, and repetitive. *See*

Plaintiffs' BAS Supplements (Doc. #138-35, #138-36, #138-37, and #138-38).

14. Parole Hearings for offenders formerly sentenced to life without parole for murders

committed while under age 18 take longer than ordinary hearings. S.J. Ex. 3 at 269–270; S.J. Ex.

4 at 58–60.

**RESPONSE:** Plaintiffs do not contest that SB 590 hearings are, on average, longer than

the average parole hearing for non-JLWOP inmates. Plaintiffs contest that they and the Class

Members all are serving LWOP sentences for murders they committed. ███████ has always

maintained his innocence. *See* Response to ¶ 1, *supra*. And Norman Brown was not even armed

when his co-defendant shot and killed Stephen Honickman and shot and injured Florence

Honickman. *See id.* Instead, Plaintiffs and this Court have defined the Class as "[i]ndividuals in

the custody of MDOC who were sentenced to life without parole under a mandatory sentencing

scheme and who were under 18 years of age at the time of the offense." Second Am. Compl. (Doc.

#65) at ¶ 170; Doc. #140 at 18.

15. Although he received a hearing, Plaintiff Brown is not now eligible for parole on

his aggregate sentence structure because of parole ineligibility on consecutive sentences that

makes him ineligible until 2025. S.J. Ex. 3 at 170; S.J. Ex. 23. He was rescheduled for a parole

hearing in 2021. S.J. Ex. 23.

**RESPONSE:** It is not controverted that Norman Brown received a parole hearing and has

been scheduled for a reconsideration hearing in 2021. Plaintiffs disagree with Defendants'

13

interpretation of the statute with respect to consecutive sentences, and therefore disagree with Defendants' assertion that Norman Brown is not now eligible for parole on his aggregate sentence structure due to his consecutive sentence for Armed Criminal Action. Defendants' interpretation of the law does not comply with the spirit of SB 590 or the Missouri or Federal Constitutions. *See also* Response to ¶¶ 3-4, *supra*.

In fact, Defendants' counsel took the opposition position in habeas litigation regarding at least one other Class Member, Tony Jones. Mr. Jones is serving LWOP plus 25 years (on first-degree-robbery), plus life (on an ACA count), plus life (on another ACA count), all running consecutively. In response to Mr. Jones' application with the Eighth Circuit Court of Appeals for leave to file a successive petition for writ of habeas corpus, Defendants' counsel stated that despite these consecutive sentences, and despite the three-year statutory minimum for ACAs, Mr. Jones was parole eligible at 25 years:

> Jones is under sentence for his first-degree murder offense (Respondent's Exhibit 1). He has two consecutive life sentences for armed criminal action offenses, and a consecutive twenty-five-year sentence for first-degree robbery (Resp. Exhibit 1). Because of the date of the offense, the first-degree robbery sentence has no statutory mandatory-minimum prison term. And the regulatory ineligibility period for the two armed criminal action sentences is greater than the statutory ineligibility period. **Therefore, those additional sentences have no impact on Jones' aggregate parole eligibility date.** *See* **14 CSR 80-2.010(1)(E). That ineligibility period is twenty-five years.**

Resp.'s Suggestions in Opposition to Application to File a Successive Habeas Petition at 4, *Jones v. Bowersox*, No. 16-3373 (8th Cir. filed Aug. 29, 2016) (emphasis added), attached hereto as **Exhibit 2**. In sum, not only do Plaintiffs contest this fact, but Defendants themselves seem to contest it as well.

16.     In each case of an offender formerly sentenced to life without parole for a murder committed while under age 18, the Board and the panel consider the circumstances of the crime as

well as the statutory factors in Sections 558.047 and 565.033, including rehabilitation and maturation, in making decisions. S.J. Ex. 1; S.J. Ex. 2; S.J. Ex 3 at 125-28, 161, 172–74, 177, 182–85; S.J. Ex. 4 at 175; SJ. Ex. 5 at 60–73; S.J. Ex. 6; S.J. Ex. 18; S.J. Ex. 19; S.J. Ex. 13 at 65–80, 116–117; 145–179.

**RESPONSE:** It is uncontroverted that the Board considered the circumstances of the crime in making decisions regarding the Class Members. The facts in this paragraph are otherwise controverted.

Plaintiffs contest that they and the Class Members all are serving LWOP sentences for murders they committed. ▮▮▮▮▮▮▮▮▮ has always maintained his innocence. *See* Response to ¶ 1, *supra*. And Norman Brown was not even armed when his co-defendant shot and killed Stephen Honickman and shot and injured Florence Honickman. *See id.* Instead, Plaintiffs and this Court have defined the Proposed Class as "[i]ndividuals in the custody of MDOC who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense." Second Am. Compl. (Doc. #65) at ¶ 170; Doc. #140 at 18.

Plaintiffs also contest that the Board considers the statutory factors in Sections 558.047 and 565.033. *See* Responses to ¶¶ 12-13, *supra*.

17.     The plaintiffs all received a parole hearing at which they could explain why they felt they were ready for parole. At those hearings, the Board considered the rehabilitation and maturation of each offender, and the offenders were informed of ways they could improve to make themselves better candidates for parole. S.J. Ex. 14 at 25-52; S.J. Ex. 15 at 20-42; S.J. Ex. 16 at 14–50; S.J. Ex. 17 at 16–46.

**RESPONSE:** Controverted. ▮▮▮▮▮▮▮ parole hearing transcript contains no indication he was "informed of ways they could improve to make themselves better candidates for parole."

*See, generally*, Doc. # 134-18. As to the other named plaintiffs, the only discussion on that issue are superficial at best and consist of comments like, "Continue the good work." Doc. #134-15 at 51:15-22; *see also* Doc. # 134-16 at 24:20-23 (telling a plaintiff "you've done pretty good as far as conducted violations since 2012. Keep it that way, okay?"); and Doc. # 134-17 at 46:1-47:14 (telling a plaintiff to "continue to behave appropriately").

Plaintiffs also contest the fact that the Board gives meaningful consideration to their rehabilitation and maturation over time. The majority of parole hearings is spent discussing details regarding the facts of the underlying offense. *See* Doc. #134-13 at 76:14; Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 113. At ▮▮▮▮▮▮ parole hearing, the Hearing Panel spent over half of the hearing discussing the circumstances of the underlying offense. *See* Doc. #134-17; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 116. The prosecuting attorney spoke for over 12 minutes. *Id*. At both ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ parole hearings, nearly two-thirds of the questions posed by the Hearing Panel focused on the circumstances of the underlying offense. *See* Doc. #134-17 and #134-18; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 119. At ▮▮▮▮▮▮ parole hearing, the Hearing Panel spent over 80% of the hearing time discussing the circumstances of the underlying offense. *See* Doc. #134-18; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 120.

During ▮▮▮▮▮▮ hearing, there were no questions concerning ▮▮▮▮▮▮ home life at the time of the offense, ▮▮▮▮▮▮ ability to resist specific crime settings, the extent of autonomous choice on ▮▮▮▮▮▮ decision-making, ▮▮▮▮▮▮ age or maturity at the time of the offense, ▮▮▮▮▮▮ intellectual capacity at the time of the offense, or other characteristics that made ▮▮▮▮▮▮ judgment different than that of adults. *See* Suggestions in Support of

16

Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 122. The evidence clearly demonstrates that the circumstances of the underlying offense are the driving factor in parole denials. *See* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 129; *see also* Exhibits 7 and 10 to Second Am. Compl. (Doc. #65-7 and #65-10).

Finally, it is impossible that the Parole Board could consider "the rehabilitation and maturation of each offender" at their hearings, as this fact asserts. As Defendants acknowledge elsewhere in their statement of facts, only one Board member is actually present during the hearing. *See* ¶ 4, *supra*.

18.     It is a general practice at hearings, and after, to inform offenders of how they can improve and to give them motivation. S.J. Ex. 6 at 96; S.J. Ex. 8 at 163–164.

**RESPONSE:** Controverted. The evidence cited does not support this fact. Jennifer Zamkus did not testify that it was a general practice to inform inmates of how they can improve and to give them motivation. She testified that IPOs have no information about why the Board voted the way it did, and therefore are limited in their ability to provide any feedback on things to improve upon to increase the likelihood of parole in the future. Doc. #134-6 at 96:7-21. Kelly Dills did not testify about any general practice of Board members or IPOs either. She only testified that the parole hearing "*might* be an opportunity to provide some further motivation, and some future things that that individual could do for the next go around." Doc. #134-9 at 164:21-24 (emphasis added).

In truth, the notice of the Board's decision provided to the inmate does not provide any guidance regarding steps they need to take to increase their readiness for parole. *See* Doc. #134-5 at 200:19-23. Although inmates might be expected to get further information regarding their parole decision from their IPO, the IPO's ability to explain the Board's decision is limited because they

are not present during the parole hearing and may not know the reason for the Board's decision. *See* Doc. #134-6 at 96:13-21; *see also* Doc. #134-4 at 82:11-83:5.

19.     The written notice of denial provided to the offender does not include all the reasons considered or used by the Board in denying parole. S.J. Ex. 4 at 117–118; S.J. Ex. 5 at 231–235; S.J. Ex. 8 at 209–211.

**RESPONSE:** Uncontroverted.

20.     It is the general practice at hearings of offenders formerly sentenced to life without parole for murders committed when under age 18 to consider the offender's rehabilitation and maturation. S.J. Ex. 3 at 125–28, 280; S.J. Ex. 4 at 19, 60–77, 92–93, 117–118; S.J. Ex. 5 at 44–69, 71–73, 88, 93– 98, 104–114, 120–244, S.J. Ex. 6 at 32, 37–61, 67–79, 84–89, 95–111; Ex. 9 at 46–79; S.J. Ex. 10 at 47; S.J. Ex. 11 at 38–56.

**RESPONSE:** Controverted. Without question, the evidence fails to demonstrate the existence of a general practice of the Board to give meaningful consideration to the inmate's rehabilitation and maturation. The uncontroverted evidence actually demonstrates otherwise. *See* Response to ¶ 17, *supra*.

The majority of parole hearings is spent discussing details regarding the facts of the underlying offense. *See* Doc. #134-13 at 76:14; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 11. At ███████ parole hearing, the Hearing Panel spent over half of the hearing discussing the circumstances of the underlying offense. *See* Doc. #134-17; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 116. The prosecuting attorney spoke for over 12 minutes. *See id.* At both ███████ ███████' and ███████████ parole hearings, nearly two-thirds of the questions posed by the Hearing Panel focused on the circumstances of the underlying offense. *See* Doc. #134-17 and

18

#134-18; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 119. At ███████████ parole hearing, the Hearing Panel spent over 80% of the hearing time discussing the circumstances of the underlying offense. *See* Doc. #134-18; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 120.

During ██████████ hearing, there were no questions concerning ██████████ home life at the time of the offense, ██████████ ability to resist specific crime settings, the extent of autonomous choice on ██████████ decision-making, ██████████ age or maturity at the time of the offense, ██████████ intellectual capacity at the time of the offense, or other characteristics that made ██████████ judgment different than that of adults. *See* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 122. The evidence clearly demonstrates that the circumstances of the underlying offense are the driving factor in parole denials. *See* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶ 129; *see also* Exhibits 7 and 10 to Second Am. Compl. (Doc. #65-7 and #65-10).

21.     The only boxes on the form for notification to an offender of a parole denial are under the categories of either release at this time would depreciate the seriousness of the offense or that there is not a reasonable probability that if the offender were released at this time he would live and remain at liberty without again violating the law, but all of the "*Miller*" factors are still considered in making the determination. S.J. Ex.  4 at 117–118; S.J. Ex. 8 at 209; S.J. Ex. 13 at 249–255.

**RESPONSE:** It is uncontroverted that the Board Action Sheet contains boilerplate language with boxes to check under only two categories: "Release at this time would depreciate the seriousness of the present offense based on:" and "There does not appear to be a reasonable

19

probability at this time that the offender would live and remain at liberty without again violating the law based on:" Doc. #134-2.

It is controverted that the Board considers all of the *Miller* factors in making parole decisions. As discussed above, the Board's focus is on the circumstances of the offense, not rehabilitation and maturity over time. The uncontroverted evidence demonstrates that the Board is not giving meaningful consideration to the factors described in the Miller decision or delineated in RSMo. § 558.047 or § 565.033.2. In Chairman Jones' testimony, cited here by Defendants, he claims to consider the five factors listed on the Board Action Sheet (which are copied and pasted from RSMo. § 558.047)—he does not testify that he considers, at all, the ten factors required by Section 565.033.2. Doc. #134-4 at 117:24-118:4. Jennifer Zamkus' testimony cited here by Defendants does not support the facts set forth in this paragraph. *See* Doc. #134-9 at 209.

Defendants cite to testimony by Gary Dusenberg that he considers the *Miller* factors despite the limitations of the BAS form. But Mr. Dusenberg's testimony revealed a wholly deficient knowledge of what is even meant by the phrase "*Miller* factors." *See, e.g.,* Doc. #134-14 at 61:11-63:1 and 147:1-9. He also testified that, to his knowledge, SB 590 only requires the Board to consider five factors. *Id*. at 148:11-16.

22. A notification of denial based on the seriousness of an offense does not prevent release following a future hearing. S.J. Ex. 3 at 28–29; S.J. Ex. 10 at 46; S.J. Ex. 12 at 112; S.J. Ex. 13 at 255–56.

**RESPONSE:** This fact is in dispute. Mr. Dusenberg testified that individuals cannot overcome the fact that parole is denied based on "circumstances surrounding the present offense." *See* Doc. #134-14 at 237:6-238:9. Furthermore, Steven Mueller's testimony, cited here by

Case 2:17-cv-04082-NKL   Document 144   Filed 06/29/18   Page 24 of 36

Defendants, does not support the facts set forth in this paragraph. *See* Doc. #134-3 at 28-29 (discussing his college education).

## ARGUMENT

**I. This Court has already ruled that Plaintiffs have a liberty interest in a meaningful parole review, and Defendants provide no reason to reconsider that decision.**

Defendants spend the first section of their summary judgment motion arguing that Plaintiffs have no liberty interest in parole, and therefore due process does not apply. But this Court already considered and ruled on that question of law, holding that, "under *Graham*, *Miller*, and *Montgomery*, the juvenile offender has a liberty interest in a meaningful parole review." Doc. #64 at 23.

Yet Defendants insist Plaintiffs have no liberty interest because Missouri statute and regulations "do not create an entitlement to release if certain criteria are met." Doc. #134 at 5. *Marshall v. Mitchell*, 57 F.3d 671, 673 (8th Cir. 1995), cited in Defendant's motion, does not warrant reconsideration of the Court's earlier decision regarding Plaintiffs' liberty interest. In Marshall, the plaintiff—who was not a juvenile offender serving a mandatory LWOP sentence— sought relief under Section 1983 when a member of his hearing panel left in the middle of his parole hearing. 57 F.3d at 672. In affirming dismissal of the plaintiff's claims, the Eighth Circuit noted that:

> The Missouri statutes require that the Board comply with certain procedures **but explicitly decline to impose substantive predicates on the Board's discretionary parole decisions**. Thus, the statutes create no liberty interest in those decisions. As Marshall has not identified any non-statutory "particularized standards or criteria [that] guide the state's decisionmakers," *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), his § 1983 complaint must be dismissed.

*Id.* (emphasis added).

21

Here, on the other hand, Missouri law *does* impose particular youth-focused criteria to guide the parole board. *Compare* RSMo. § 217.692.4 ("The parole board shall consider, *but not be limited to the following criteria* when making its parole decision."), *with* RSMo. §§ 558.047.5 & 565.033.2 (enumerating some of the so-called *Miller* factors without providing that other factors may be considered).

Furthermore, the Class Members' liberty interest is also constitutionally-derived. "A liberty interest may arise from the Constitution itself." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 135 (Mo. 1995). Through *Graham v. Florida*, 560 U.S. 48 (2010), *Miller*, and *Montgomery*, the Supreme Court has granted juvenile offenders Fourteenth Amendment due process protections when being considered for parole. Just as *Miller* and *Montgomery* require that youth be treated differently than adults at sentencing, so, too, they must also be treated differently in the parole process.

As argued in response to Defendants' motion to dismiss, and in Plaintiffs' own motion for summary judgment, *Graham*, *Miller* and *Montgomery* created a constitutionally-protected liberty interest in parole proceedings that provide a meaningful opportunity for release. While this may appear to be a matter of first impression for this Court, district courts in other circuits have held that *Graham*'s requirement that States provide juvenile offenders a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," 560 U.S. at 75, extends to juveniles serving parolable life sentences, and the parole process itself. *See, e.g., Greiman v. Hodges*, 79 F. Supp. 3d 933, 945 (S.D. Iowa 2015); *Hayden v. Keller*, 134 F. Supp. 1000, 1009 (E.D. N.C. 2015) ("If a juvenile offender's life sentence, while ostensibly labeled as one "with parole," is the functional equivalent of a life sentence without parole, then the State has denied that offender the "meaningful opportunity to obtain release based on demonstrated maturity and

rehabilitation" that the Eighth Amendment demands.); *Wershe v. Combs*, 1:12-cv-1375, 2016 WL 1253036, *3 (W.D. Mich. Mar. 31, 2016) (*Graham*'s "discussion of a meaningful opportunity to obtain release . . . suggests that the decision imposes some requirements after sentencing as well."); *Maryland Restorative Justice Initiative v. Hogan*, ELH-16-1021, 2017 WL 467731, *21 (D. Md. Feb. 3, 2017).[4]

Defendants' motion would have this Court ignore the critical fact that the Class Members were under 18 years old at the time of the underlying offense. None of the cases Defendants cite in support of their motion deal with youthful offenders. Yet this entire Class is made up of individuals who were children at the time of the underlying crimes. Thus, they are categorically entitled to greater protections and greater rights at parole hearings than adult offenders. *Greiman*, 79 F. Supp. 3d at 945; *Hogan*, 2017 WL 467731 at *21; *Wershe*, 2016 WL 1253036 at *3. This is true even if Missouri statutes, standing alone, do not create a liberty interest in parole. For these reasons this Court should affirm its October 31, 2017 ruling that, "the juvenile offender has a liberty interest in a meaningful parole review." Doc. #64 at 23.

---

[4] Numerous State courts have reached the same conclusion. *See, e.g., Atwell v. State*, 197 So. 3d 1040, 1042 (Fla. 2016), *reh'g denied*, No. SC14-193, 2016 WL 4440673 (Fla. Aug. 23, 2016) (mandatory life imprisonment sentence unconstitutional under *Miller* and *Graham*, even though it provided for parole, because the Florida parole process "fails to take into account the offender's juvenile status at the time of the offense" and "effectively forces juvenile offenders to serve disproportionate sentences of the kind forbidden by *Miller*."); *Hawkins v. New York State Dep't of Corr. & Cmty. Supervision*, 30 N.Y.S.3d 397 (N.Y. App. Div. 2016) (at the parole release hearing stage, defendant who was sentenced to 25-years-to-life entitled to a *Miller*-type hearing where "youth and its attendant characteristics" are considered) (internal citations omitted); *Diatchenko v. Dist. Attorney for Suffolk Dist.*, 1 N.E.3d 270 (Mass. 2013) (juveniles should have their unconstitutional JLWOP sentences modified to reflect parole eligibility after serving fifteen years); *Diatchenko v. Dist. Attorney for Suffolk Dist.*, 27 N.E.3d 349 (Mass. 2015) (at parole hearings, those juvenile homicide offenders were entitled to certain procedural protections, including the right to counsel, access to funds for expert witnesses, and the availability of judicial review).

23

**II.    Defendants' argument that Plaintiffs "have had more process than they are constitutionally entitled to receive" is contradicted by due process jurisprudence and the uncontroverted facts.**

Defendants erroneously argue that Plaintiffs "have had more process than they are constitutionally entitled to receive," Doc. #134 at 10, arguing Plaintiffs are, at most, entitled to an opportunity for a hearing and guidance on how they fall short of criteria for release, Doc #134 at 9. Defendants present an overly-narrow definition of the due process to which the Class is entitled.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands" and requires looking to "the nature of the interest at stake." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-571 (1972)). Parole reviews for juvenile offenders in particular "demand more procedural protections." *Hayden*, 134 F. Supp. 3d at 1010–11 (citing *Graham*, 560 U.S. at 79); *Greiman*, 79 F. Supp. 3d at 945.

Here, the interest at stake is *Graham* and *Miller*'s promise of a meaningful and realistic opportunity for release based on demonstrated maturity and rehabilitation and complying with *Miller*'s mandate that life without parole sentences be reserved only for the rarest juvenile offender. In light of these serious constitutional rights and the Proposed Class Members' youthful status at the time of their underlying offenses, strict compliance with due process is required.

This means that, at a minimum, Plaintiffs and the Proposed Class must be provided an "'opportunity to be heard' … at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The hearings themselves must be meaningful—that is, they must "involve real evaluations of the [record and] they consider all of the relevant evidence." *Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017) (involving due process protections for continuous solitary confinement). Proposed Class Members also must be given the ability to adequately prepare for the parole hearing and receive "a statement of the reasons why parole was

24

denied." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (finding sufficient due process procedural protections where petitioners "were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Parker v. Corrothers*, 750 F.2d 653, 662 (8th Cir. 1984) (explaining that "if the decisionmaker paroles some inmates convicted of murder, but denied parole to other inmates on the ground that they were convicted of murder, it must explain why").

That explanation must consist of more than "boilerplate generalities" why the underlying offense requires deferral of parole. *Parker*, 750 F.2d at 662 ("[T]he Board may deny [the plaintiff] parole release because of the severity of her criminal act and sentence, but it must explain in more than boilerplate generalities why the severity of her particular offense and sentence requires deferral of parole."); *see also Olds v. Norman*, No. 4:09CV-1782 CAS/TCM, 2013 WL 316017, at *5 (E.D. Mo. Jan. 8, 2013), *report and recommendation adopted*, No. 4:09-CV-1782 CAS, 2013 WL 315974 (E.D. Mo. Jan. 28, 2013) ("A parole board may deny release to an inmate based on the severity of the inmate's criminal act and sentence, but, where a liberty interest is involved, the parole board must explain in more than boilerplate generalities why the severity of the particular offense and sentence requires a deferral of parole.") (citing *Cooper v. Missouri Bd. of Prob. & Parole*, 866 S.W.2d 135, 138 (Mo. banc 1993)).[5]

---

[5] *See also U.S. ex rel. Richerson v. Wolff (Wolff)*, 525 F.2d 797, 800 (7th Cir. 1975) ("We conclude that due process includes as a minimum requirement that reasons be given for the denial of parole release.")*; Candarini v. Attorney General of the United States*, 369 F.Supp. 1132, 1137 (E.D.N.Y.1974) ("'(m)ere pro forma language . . . will not suffice" as an explanation for parole denial); *Craft v. Attorney General of the United States*, 379 F.Supp. 538, 540 (M.D.Pa. 1974) (denying due to seriousness of the offense "was tantamount to no reason and afforded the Petitioner none of the safeguards" of due process"); *U.S. ex rel. Brown v. U.S. Bd. of Parole*, 443 F. Supp. 477, 482 (M.D. Pa. 1977) ("Due process requires that, when misconduct is the basis for the denial of parole, the prisoner must be informed in the statement of reasons of that reliance."); *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated as moot*, 419 U.S. 1015 (1974); *see also Wolff*, 525 F.2d at 804.

25

Furthermore, due process entitles Plaintiffs access to adverse information in their parole file. *Williams v. Missouri Bd. of Prob. & Parole*, 661 F.2d 697, 700 (8th Cir. 1981) ("minimum due process requires that an inmate in Missouri seeking parole be advised of adverse information in his file.").

The uncontroverted evidence proves Defendants are, without question, failing to meet even minimal due process standards. More specifically, the evidence shows: voting Board members do not generally review the entire parole file before voting (*see* Doc. #134-14 at 50:2-53:1, 72:12-13, 160:1-169:17, and 251:14-253:6; Doc. #134-4 at 69:22-71:10; Doc. #134-5 at 142:15-20; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 65-75), Class Members are provided only boilerplate explanations for their parole decisions. (*see* Doc. #134-2; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 173-178); and as a rule, the Class is denied access to any part of their parole file or the recording of their hearing (*see* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 169-170).

Defendants overlook these due process issues in their motion. But the uncontroverted evidence shows that there are a multitude of due process violations in Plaintiffs' parole review processes. if anyone is entitled to judgment on Plaintiffs' due process claims, it is the plaintiffs themselves.

## III. Defendants are not entitled to summary judgment on Plaintiffs' Eighth Amendment and related state claim because Defendants are denying the Class Members a meaningful and realistic opportunity for release in contravention of Supreme Court precedent.

Defendants boldly claim: "There is no argument that can be supported by binding precedent that the remedy provided to the plaintiffs here is not more than constitutionally adequate." Doc. #134 at 11. That is not true.

26

Plaintiffs refer the Court to the United States Supreme Court's decision in *Montgomery*, which states that juvenile offenders, "*must* be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls *must* be restored." *Montgomery v. Louisiana*, 577 U.S. ___, ___, ___, 136 S.Ct. 718, 736-37 (2016) (emphasis added). This meaningful opportunity for release must present substantially more than a "mere hope" of parole. *See Greiman*, 79 F. Supp. 3d at 945 (quoting *Graham*, 560 U.S. at 79); *Hogan*, 2017 WL 467731 at 25-26.

The system Defendants have set up to consider Class Members for release on parole fails to provide the meaningful and realistic opportunity for release required by *Graham* and its progeny. *See Graham*, 560 U.S. at 79 (noting a constitutionally-adequate opportunity for release must enable the inmate to "rejoin society" and "achieve maturity of judgment and self-recognition of human worth and potential"); *Montgomery*, 136 S.Ct. at 736-37.

The Board has denied parole in approximately 86% of cases. *See* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 95-96. Not a single individual has been released from prison pursuant to the promise of SB 590. *Id.* at ¶¶ 97-98. And in Professor Heidi L. Rummel's uncontested expert opinion, "a 16% chance of being granted parole falls short of providing a constitutionally meaningful opportunity for release." *Id*. at ¶ 100.

Furthermore, the Board's decisions are driven by the circumstances of the underlying offense, not Class Members' rehabilitation and maturity over time. *See* Responses to ¶¶ 9-22, *supra*; *see also* Suggestions in Support of Plaintiffs' Motion for Summary Judgment (Doc. #138) at ¶¶ 99-101, 116, 119, 122-125, 128, 137, 141, 153, and 162. Yet, as a matter of law, the Board's decision whether to grant parole must be based on maturity and rehabilitation, not the seriousness of the offense or victim impact statements. *See Graham*, 560 U.S. at 75; *see also Adams v.*

*Alabama*, 136 S. Ct. 1796, 1800 (2016) ("gruesomeness of a crime is not sufficient to demonstrate that a juvenile offender is beyond redemption"); *Greiman*, 79 F. Supp. 3d at 943-44 (opportunities for release cannot be merely "theoretical"); *Hayden*, 134 F. Supp. 3d at 1010-11; *Hogan*, 2017 WL 467731 at *20 (same); *State v. Young*, 794 S.E.2d 274, 279 (N.C. 2016) (same); *Funchess v. Prince*, No. 142105, 2016 WL 756530, at *5 (E.D. La. Feb. 25, 2016) (same); *Atwell*, 197 So. 3d at 1048-49 (same); Sarah French Russell, *The Role of the Crime at Juvenile Parole Hearings: A Response to Beth Caldwell's* Creating Meaningful Opportunities for Release, 41 Harbinger 227 (Dec. 8, 2016).

Parole release is no more than a remote possibility for Class Members—a decision that teeters on arbitrary and unguided discretion. As a result, they continue to serve constitutionally disproportionate sentences amounting to cruel and unusual punishment. *See, e.g., Diatchenko*, 27 N.E.3d at 365 ("the parole hearing acquires a constitutional dimension for a juvenile homicide offender because the availability of a meaningful opportunity for release on parole is what makes the juvenile's mandatory life sentence constitutionally proportionate"); *Greiman*, 79 F. Supp. 3d at 944. The uncontroverted evidence does not warrant judgment in Defendants' favor on Plaintiffs' Counts I and III.

## IV. Defendants are not entitled to judgment on Plaintiffs' declaratory judgment claim because the uncontroverted evidence proves Defendants are not complying with RSMo. § 558.047 or § 565.033.2.

Finally, the uncontroverted evidence does not weigh in Defendants' favor on Plaintiffs' declaratory judgment count. Defendants argue that the Board is considering the factors enumerated in RSMo. § 558.047 and §565.033. In truth, they are not.

First, the evidence does not clearly demonstrate that all ten factors set forth in RSMo. § 565.033.2 are incorporated into Class Members' pre-hearing reports. *See* Response to ¶ 12, *supra*. The worksheets used by IPOs to prepare the pre-hearing reports do not expressly require

28

that the IPO discuss with the inmate: (a) the inmate's subsequent growth and increased maturity since the underlying offense(s) occurred (RSMo. § 558.047.5(2)); (b) whether the inmate remains the same risk to society as they did at the time of the initial sentencing (RSMo. § 558.047.5(5)); or (c) the effect of characteristics attributable to the inmate's youth on their judgment (RSMo. § 565.033.2(9). *See* Doc. #134-1; Doc. #134-9 at 146:13-17.

The worksheets used by IPOs to prepare the pre-hearing reports do not expressly require that the IPO discuss with the inmate: (a) the inmate's subsequent growth and increased maturity since the underlying offense(s) occurred (RSMo. § 558.047.5(2)); (b) whether the inmate remains the same risk to society as they did at the time of the initial sentencing (RSMo. § 558.047.5(5)); or (c) the effect of characteristics attributable to the inmate's youth on their judgment (RSMo. § 565.033.2(9). *See* Response to ¶ 12, *supra*. The uncontroverted facts demonstrate that not all the Section 558.047 factors are incorporated into Plaintiffs' pre-hearing reports. *Id*.

Plaintiffs' pre-hearing reports also do not meaningfully discuss all ten factors delineated in Section 565.033.2. Sidney Roberts' pre-hearing report ███████████████████████  ████████████████. *See* Doc. #134-8 at 44:22-11; *compare, e.g.*, Sidney Roberts' Pre-Hearing Report (Doc. #138-16) ("Roberts PHR") *with* February 27, 2017 Report of Forensic Psychological Evaluation by Brooke Kraushaar, Psy.D. (Doc. #138-17). Mr. Roberts' pre-hearing report ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████. *See* Doc. #134-7 at 74:14-22; Roberts PHR; Sidney Roberts' Diagnostic Center Report (Doc. #138-22), at 3. Only a fraction of Pete Roland's pre-hearing report ████████████ ████████████████████. *See* Theron Roland's Pre-Hearing Report (Doc. #138-19). Norman Brown's pre-hearing report ██████████████████████████████████



▆▆▆▆. *See* Norman Brown's Pre-Hearing Report (Doc. #138-20). Mr. Brown's pre-hearing report

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.* Ralph McElroy's pre-hearing report ▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Ralph McElroy's Pre-Hearing Report (Doc. #138-21).

Not one of Plaintiffs' parole hearings involved questions from the hearing panel concerning all Section 558.047 or 565.033.2 factors. During ▆▆▆▆▆▆ hearing, there were no questions concerning peer pressure or familial pressure, past abuse, ▆▆▆▆▆▆ home life at the time of the offense, ▆▆▆▆▆▆ ability to resist specific crime settings, the extent of autonomous choice on ▆▆▆▆▆▆ decision-making, ▆▆▆▆▆▆ intellectual capacity at the time of the offense, or other characteristics that made ▆▆▆▆▆▆ judgment different than that of adults. *See* Doc. #134-16. During ▆▆▆▆▆▆ hearing, there were no questions concerning ▆▆▆▆▆▆ home life at the time of the offense, ▆▆▆▆▆▆ ability to resist specific crime settings, the extent of autonomous choice on ▆▆▆▆▆▆ decision-making, ▆▆▆▆▆▆ age or maturity at the time of the offense, ▆▆▆▆▆▆ intellectual capacity at the time of the offense, or other characteristics that made ▆▆▆▆▆▆ judgment different than that of adults. *See* Doc. #134-18. At none of Plaintiffs' parole hearings did the Hearing Panels asked any questions regarding the incompetencies associated with Plaintiffs' youth at the time of the underlying offenses. *See* Doc. # 134-15, 134-16, 134-17, and 134-18.

Furthermore, the documentation the hearing panel is supposed to complete for SB 590 parole hearings wholly omits the ten elements listed in RSMo. § 565.033.2. *Compare* Doc. #134-2 *with* RSMo. § 565.033.2; *see also* Doc. #134-12 at 102:9-16. Yet hearing panel members are

30

under the impression that the factors listed in the Board Action Sheet documentation are the only factors they are required to consider when conducting parole reviews for the Proposed Class. *See* Doc. #134-12 at 25:13-16 and 50:5-18; Doc. #134-5 at 159:5-20 (testifying he likely did not ask ██████████ about abuse he suffered as a child because it was not listed as one of the five questions in the BAS Supplement); Doc. #134-14 at 79:23-80:5 (testifying there is nothing in the parole file that deals specifically with the SB 590 factors other than the BAS Supplement). Even when the hearing panel makes notes on Plaintiffs' BAS Supplements, such comments are minimal, superficial, and repetitive. *See* Plaintiffs' BAS Supplements (Doc. #138-35, #138-36, #138-37, and #138-38).

In sum, it is not uncontroverted that the Board considers the factors required under Missouri law. To the contrary, it is clear that they do not.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' motion for summary judgment and enter judgment in Plaintiffs' favor.

Respectfully submitted,

RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER

By: /s/ Amy E. Breihan
Amy E. Breihan, # 65499MO
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org

HUSCH BLACKWELL LLP

By: /s/ Denyse L. Jones
Matthew D. Knepper, # 61731MO
Sarah L. Zimmerman, # 69440MO

Denyse L. Jones, # 53611
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Phone: (314) 480-1500
Fax: (314) 480-1505
Matt.Knepper@huschblackwell.com
Sarah.Zimmerman@huschblackwell.com
Denyse.Jones@huschblackwell.com

Jordan T. Ault, #59599MO
235 East High Street
P.O. Box 1251
Jefferson City, MO 65102
Phone: (573) 635-9118
Fax: (573) 634-7854
Jordan.Ault@huschblackwell.com

Dated: June 29, 2018


## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2018, a true and correct copy of the foregoing

was electronically filed using the Court's online case filing system, which will send notice to all

counsel of record.

By: /s/ Amy E. Breihan
One of Plaintiffs' Attorneys