# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| NORMAN BROWN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANNE L. PRECYTHE, et al., <br><br> Defendants. | Case No. 17-cv-4082-NKL |

## ORDER

Counsel for the Plaintiffs, a class of individuals who received mandatory sentences of life without parole when they were just children, sought and received from the Court an injunction requiring the state defendants to comply with constitutional requirements for parole opportunities that the Supreme Court mandated in a series of decisions issued in the last decade. Counsel now move to recover attorney fees and expenses. Plaintiffs' motion for fees and costs is GRANTED in part as set forth below.

I. **BACKGROUND**

In 2012, the United States Supreme Court ruled that a mandatory sentence of life without parole is unconstitutional for those who were children when the crimes for which they were convicted took place. *Miller v. Alabama*, 567 U.S. 460 (2012). The Court's rationale was premised on "developments in psychology and brain science" that "continue[d] to show fundamental differences between juvenile and adult minds." *Graham v. Florida*, 560 U.S. 48, 68 (2010), as modified (July 6, 2010). Not only do "children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking," but also, "children are more vulnerable to negative influences and outside pressures,

including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings." *Miller*, 567 U.S. at 471 (quotation marks and citations omitted). "Parts of the brain involved in behavior control continue to mature through late adolescence." *Graham*, 560 U.S. at 68. Thus, studies have shown that "only a relatively small proportion of adolescents who engage in illegal activity develop entrenched patterns of problem behavior." *Miller*, 567 U.S. at 471 (quotation marks and citation omitted). The actions of a juvenile therefore "are less likely to be evidence of irretrievably depraved character than are the actions of adults." *Graham*, 560 U.S. at 68 (quotation marks and citation omitted). Because "a greater possibility exists that a minor's character deficiencies will be reformed," it "would be misguided" to treat a juvenile offender in the same fashion as an adult. *Id.* (quotation marks and citation omitted). A mandatory sentence of life without parole takes no account of the fact that the "signature qualities" of youth described above "are all transient." *Miller*, 567 U.S. at 476 (quotation marks and citation omitted). It "disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at 478.

In 2016, the Supreme Court clarified that the prohibition on mandatory sentences of life without parole for juveniles applies retroactively. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). The court also found that a state could remedy a *Miller* violation by providing a meaningful opportunity for parole of juveniles who had already been sentenced to life without parole.

Plaintiffs filed this case on May 18, 2017, seeking a meaningful opportunity for release. The five claims alleged were based on the same alleged conduct and presented questions of first impression in Missouri, including whether a juvenile offender has a liberty interest in parole under the recent Supreme Court case law.

In response, Defendants filed a motion to dismiss all of the claims. Doc. 23. The matter was fully briefed on July 28, 2017. Doc. 46. On August 11, 2017, Plaintiffs filed a motion to amend the complaint. Doc. 48. That motion was fully briefed on September 7, 2017. Doc. 55. The Court denied the motion to dismiss in full and granted Plaintiffs' motion to amend. Doc. 64.

On March 30, 2018, Plaintiffs moved for class certification. After the motion was fully briefed, the Court certified a class of "[i]ndividuals in the custody of the Missouri Department of Corrections who were sentenced to life without parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense." Doc. 140.

In the meantime, the parties litigated discovery disputes concerning materials that Defendants maintained confidentially, but which were important to Plaintiffs' case.

Finally, both sides moved for summary judgment on all claims. Docs. 133, 137. Although the Court granted summary judgment to the defendants on the statutory claim, the Court granted summary judgment to Plaintiffs on the constitutional claims, stating that "[t]he evidence establishes that certain of Defendants' policies, procedures, and customs for parole review for those serving JLWOP sentences violate the class members' constitutional rights." Doc. 158, pp. 26-27. In light of the Supreme Court's statement that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance," *Graham*, 560 U.S. at 75, the Court ordered Defendants to present a plan for compliance with the applicable statutory and constitutional requirements. Doc. 158, p. 27.

Before the Court ruled on the competing plans for compliance, the parties, by order of the Court, participated in mediation with The Honorable John T. Maughmer. Doc. 168. Through

3

mediation, the parties were able to resolve some of their differences.[1] Defendants subsequently filed a revised plan for compliance. Doc. 172. Plaintiffs' filed a response to that revised plan. Doc. 173. At Plaintiffs' request, the Court held an evidentiary hearing regarding the proposals for compliance on March 27, 2019. The parties submitted post-hearing briefing and reports. Docs. 176-178. On August 1, 2019, the Court issued an order adopting the terms to which the parties agreed and deciding the issues that remained in dispute. Doc. 179.

Plaintiffs now seek $789,303.10 in attorneys fees and expenses. The parties agree that Plaintiffs are the prevailing parties but disagree as to the amount of fees that should be awarded.

## II. DISCUSSION

### a. Fees

The basis for any fee award under § 1988 is the lodestar calculation, the product of a reasonable hourly rate and the number of hours reasonably expended on the litigation. *See Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."). Thus, to determine whether the fees that Plaintiffs seek are reasonable, the Court must determine (1) a reasonable rate for the attorneys' time and (2) the number of hours reasonably expended on the litigation.

---

[1] Defendants' agreement was contingent on Plaintiffs' success on the appeal from the Court's summary judgment motion—in other words, if the Eighth Circuit reversed the Court's summary judgment decision, then Defendants' agreements with regard to the plan for compliance would no longer be effective.

## 1. Reasonable Hourly Rates

The parties agree that the Eighth Circuit applies the Prison Litigation Reform Act to cases such as this one. Doc. 200, p. 6; 202, p. 4.[2]

### A. Rate for Attorneys

The PLRA limits the hourly rate for attorney fees to no "greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3).

There is no dispute that the rates established under § 3006A of Title 18 for the relevant time periods are as set forth below:[3]

| Time Period | Hourly Attorney Rate Under Section 3006A of Title 18 | Highest PLRA Hourly Rate |
|---|---|---|
| May 5, 2017 – March 22, 2018 | $132 | $198 |
| March 23, 2018 – February 14, 2019 | $140 | $210 |
| February 15, 2019 – December 31, 2019 | $148 | $222 |

Thus, despite the facts that Plaintiffs' attorneys have significant experience, were well prepared, diligent, and skillful, and obtained excellent results for their clients, in calculating the lodestar figure, the Court cannot exceed the PLRA hourly rates set forth above.

---

[2] In light of Plaintiffs' concession on reply that the PLRA applies to the fees in this case under Eighth Circuit law, the Court need not address the parties' arguments about whether the Laffey Matrix is an appropriate basis for determining whether Plaintiffs' proposed fee requests are reasonable.

[3] *See* Guide to Judiciary Policy, Vol. 7, Defender Services, Part A, Guidelines for Administering the CJA and Related Statutes, Chapter 2: Appointment and Payment of Counsel (https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses#a230_16).

Notably, Defendants have not suggested that the PLRA's maximum rate is unreasonable for any of the billing attorneys and the Court finds that a Missouri lawyer specializing in constitutional claims commands substantially higher rates than the PLRA permits. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, No. 2:13-cv-4022-NKL, 2018 U.S. Dist. LEXIS 190824, at *4 (W.D. Mo. Nov. 7, 2018).

Therefore, the Court finds that, under the PLRA's strictures, the maximum rates under the PLRA are reasonable for each attorney.

### B. Rate for Paralegal

The PLRA is silent with regard to rates for "work performed by paralegals and similar support staff." *Washington v. Denney*, No. 14-CV-6118-NKL, 2017 WL 4399566, at *3 (W.D. Mo. Oct. 3, 2017) (citing *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1235 (D. Colo. 2009) (citing 165 A.L.R. Fed. 551 § 2(b)); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1179 (D. Nev. 1999) (noting that "the PLRA is silent with respect to fees allowed to paralegals")). Therefore, "'courts have used their own discretion' in determining appropriate rates for such staff." *Washington*, 2017 WL 4399566, at *3 (quoting *Hall*, 648 F. Supp. 2d at 1235).

Plaintiffs seek an hourly rate of $216 for the paralegals in this case. Defendants argue that this rate is too high, pointing to a Third Circuit case from 2004, *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 375 (3d Cir. 2004), which upheld a rate of $85 for paralegals. Doc. 200, p. 10. Defendants acknowledge that "[t]he work in the case at bar is more complex than in an ADEA case such as *Potence*," but nonetheless propose a rate of $100 per hour for Plaintiffs' paralegals. *Id.*

The *Missouri Lawyer Weekly* Billing Rates publication for 2019 shows that the median hourly rate for support staff (which might include not only paralegals, but also legal assistants,

6

mail room clerks, copy room staff, etc.) is $175. For class actions particularly, paralegal rates range between $90 and $305. Doc. 188-2, ECF pp. 13-16. The Court finds that the hourly rate of $216 is a reasonable starting point for calculating the PLRA rates for the claimed paralegal hours in this case. *See Washington*, 2017 WL 4399566, at *4.

Because the proposed rates are reasonable, the Court will determine the appropriate PLRA rate for the paralegal by comparing the usual billing rate for the paralegal with the usual billing rates for the attorneys. In other words, the Court will determine a "PLRA" rate for the paralegal by reducing the usual rate in proportion to the amount that the PLRA has reduced the corresponding attorney rate.[4] To illustrate:

$$\frac{x \text{ (PLRA paralegal rate)}}{\$198 \text{ (PLRA attorney rate in first period)}} = \frac{\$216 \text{ (usual rate for paralegal)}}{\$366.75 \text{ (average rate for Husch attorney)}}$$

$$x = \frac{\$216 \times \$198}{\$366.75}$$

or,

$$x = \$116.61$$

Applying the PLRA cap to the billing rate for each of the three periods in this fashion produces billing rates as follows:

| Period | Formula | Rate |
|---|---|---|
| Paralegal Rate for May 5, 2017 – March 22, 2018 | 216 x 198 / 366.75 | $116.61 |

---

[4] Plaintiffs used the average Husch Blackwell attorney rate as the basis for the paralegal-to-attorney rate ratio to calculate a proposed PLRA-appropriate rate for the paralegal (Doc. 202, p. 5, n.2), rather than the lowest attorney-rate presented on the motion, as the Court did in *Washington*, 2017 WL 4399566, at *4. The Court therefore uses the average Husch Blackwell attorney rate to calculate the paralegal rate, which produces a slightly lower rate for the paralegal than she would have received under the framework used in *Washington*. .

| | | |
|---|---|---|
| Paralegal Rate for March 23, 2018 – February 14, 2019 | 216 x 210 / 366.75 | $123.68 |
| Paralegal Rate for February 15, 2019 – December 31, 2019 | 216 x 222 / 366.75 | $130.75 |

The Courts finds these rates reasonable under the restrictions imposed by the PLRA. Awarding fees in this manner for paralegals rewards Plaintiffs' attorneys' "cost-effective delivery of legal services." *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) ("By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, by reducing the spiraling costs of civil rights litigation, furthers the policies underlying civil rights statutes."); *see also Perez v. Cate*, 632 F.3d 553, 556 (9th Cir. 2011) (awarding paralegal fees "at the market rate" to extent permitted under the PLRA). At the same time, reducing the paralegal's rates in light of the PLRA cap on attorney rates is in keeping with the legislative intent behind the PLRA. *See, e.g.*, *Roberson v. Brassell*, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998) (reducing paralegal rates "in line with the attorneys' reduced rates"); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1179–80 (D. Nev. 1999) ("Leaving the rates charged for paralegal and law clerk work at the pre-PLRA levels while reducing attorneys rates to $112.50 per hour as dictated by the PLRA is, to say the least, disproportionate. . . . Given the clear congressional intent behind the enactment of the fee caps in the PLRA, the court has little choice but to reduce the fees allowed for law clerks and paralegals to some degree.").

### 2. Reasonable Hours

The Court next must review the hours expended by the attorneys to ensure that they are reasonable. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. Inadequate documentation requires reduction of the fee award. *Id.* Furthermore, the Court "should exclude from this initial fee calculation hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill

and experience of lawyers vary widely." *Id.*, at 434. In addition, the PLRA requires the Court to order reimbursement of only those attorneys' fees that were "directly and reasonably incurred in proving an actual violation" of Plaintiff's rights. 42 U.S.C. § 1997e(d)(1).

Plaintiffs seek compensation for over 2,070 hours of attorney time and 59.2 hours of paralegal time, which was devoted to motion practice, client communications, locating and evaluating expert witnesses, and preparing for the evidentiary hearing regarding injunctive relief for Defendants' constitutional violations.

Defendants raise multiple arguments in favor of reducing the hours claimed by the Plaintiffs. First, they argue that, because Plaintiffs did not prevail on their statutory claim, their award should be reduced accordingly. Second, they argue that Plaintiffs' time records show "excessive billing." Third, Defendants argue that a volume discount is appropriate because taxpayers will bear the costs here. The Court considers these arguments in turn.

### A. Whether Plaintiffs' Hours Should Be Discounted to Account for Summary Judgment in Favor of Defendants on Plaintiffs' Statutory Claim

Defendants argue that, because Plaintiffs did not prevail on their claim alleging violation of the Missouri statute enacted in response to *Montgomery*, which was one of the five claims that Plaintiffs asserted in this case, their billable hours should be discounted.

The Supreme Court has noted that in some civil rights cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief

obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Here, in ruling on the parties' motions for summary judgment, the Court expressly observed that the "five claims are based on the same alleged conduct." Thus, in this case, the Court cannot take a piecemeal approach to Plaintiffs' time, but must focus on the significance of the overall relief that Plaintiffs obtained. Plaintiffs prevailed on four out of five claims, securing injunctive relief on the basis of proven constitutional violations. It would be inappropriate to discount their time because one of the five claims, brought under a statute enacted to address the constitutional principles at issue in the other claims, did not succeed on the evidence presented at the summary judgment stage. *See Maule v. Nicholson*, No. CIV 04-1369, 2006 WL 3758390, at *2 (D. Minn. Dec. 20, 2006) (declining to reduce request for fees based on plaintiff's not succeeding on two of the three claims asserted where plaintiff nonetheless "achieved excellent results"). This is particularly so because the statutory claim here was just an alternative legal ground for securing the very relief that Plaintiffs ultimately successfully secured through their constitutional claims. As the Supreme Court has stated, "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.*

### B. Whether Plaintiffs' Time Entries Show Excessive Billing

Defendants argue that "[m]any of Plaintiffs' counsel's time entries" are excessive and should be disallowed. The only category of purportedly "excessive" entries that Defendants mention is "internal communication." Defendants do not point to specific examples of internal communications that should be discounted; instead, they ask that time for all such communications be eliminated.

Having reviewed the time entries of Plaintiffs' counsel, the Court finds that they are sufficiently detailed to permit analysis, and the analysis shows that the discussions and correspondence were relevant to the case. *See, e.g.,* p. 7 (listing call to discuss mediation, call to discuss data management, call to discuss prison transport). In a case concerning constitutional issues affecting a class of plaintiffs, "internal" communications between attorneys to delegate assignments, coordinate litigation strategy, and discuss legal theories is reasonable.

In support of their position that fees for "internal" communications are not recoverable, Defendants cite an interpleader case, *Western-Southern Life Assur. Co. v. Lee*, No. 13-CV-2499 CEJ, 2015 WL 2124753, *4 (E.D. Mo. May 6, 2015). However, the standard for awarding fees in an interpleader case is very different. As the *Lee* court noted, only "attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit" are recoverable in an interpleader action.

Nor are the two other cases that Defendants cite relevant to the question of whether internal communications are compensable in a civil rights action. *See Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996) (affirming district court's finding that some attorney hours were duplicative and some tasks should have taken less time to complete); *Maule*, 2006 WL 3758390, at *2 (reducing fees because of excessive and duplicative time entries). Defendants do not suggest that Plaintiffs' entries here show one attorney performing the same tasks that another purportedly performed, nor do they argue with any specificity that Plaintiffs spent too much time on any given task.

Nonetheless, the natural consequence of so many lawyers working on a single case is a large number of times entries for coordination between and consultation among counsel. While it is not unreasonable to task a number of attorneys with work on a case of this nature and scope, this

kind of staffing necessarily comes with inefficiencies, as specifically shown in the billing records before the Court. To account for such inefficiencies, the Court finds that a 10% reduction in the hours of the attorneys alone is appropriate *See Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 11CV01691 AGF, 2013 WL 4855304, at *4 (E.D. Mo. Sept. 11, 2013) (reducing hours "to account for the inefficiencies engendered by the involvement of three law firms in the case").

Defendants' argument regarding the time that Plaintiffs' counsel spent strategizing with outside organizations regarding the case, including on the issue of an appropriate remedy, is unconvincing. Time spent consulting with organizations that specialize in the legal and factual matters at the heart of this litigation is analogous to time spent conferring with a formally retained expert, and it is no less compensable.

Finally, in response to Defendants' argument that press statements are not appropriately charged to Defendants, Plaintiffs have withdrawn their request for compensation for 2.8 hours that Husch attorneys billed for, *inter alia*, discussion and analysis of press issues. The Court has adjusted the lodestar calculation accordingly.

### C. Volume Discount

Defendants argue that Plaintiffs' fees should be reduced by 10%, citing *Fields v. R.L. Hurst Inc.*, No. 14CV00137 JLH, 2015 WL 13331928, at *2 (E.D. Ark. Nov. 9, 2015). However, in *Fields*, plaintiffs' counsel themselves proposed a 10% reduction to their fees. Plaintiffs here have made no such concession. *Fields* is not relevant on this issue.

Defendants also argue that a volume discount is warranted because the fees and costs ultimately will be paid by Missouri taxpayers. Taxpayers of some sort typically bear the cost of litigation in civil rights cases when the plaintiff succeeds. If a special discount were warranted for

that reason alone, then the legislature would have built a discount into Section 1983. However, outside of capping the hourly rate through the PLRA, the legislature did not do so.

Plaintiffs' counsel exercised billing judgment even prior to submitting their fee request to the Court. They chose not to seek recovery for time billed by former counsel of record Mae Quinn and Matt Gartner because their time entries were insufficiently detailed; they also declined to seek fees for MacArthur Justice Center law clerks and 15 additional individuals at Husch Blackwell—lawyers, law clerks, paralegals, and support staff—who assisted with this litigation in a more ancillary capacity. Affidavit of Amy E. Breihan (Doc. 188-1) ¶¶ 4-5; Affidavit of Matthew D. Knepper (Doc. 188-3) ¶ 12.

The Court will not impose a further discount here without any factual or legal basis.

### 3. Lodestar Calculation

With the adjustments to the billing rates and hours discussed above, the lodestar calculation is as follows:

| Time Period | Hourly Rate | Hours | Applicable Reduction | Total Fees |
|---|---|---|---|---|
| **May 5, 2017 – March 22, 2018** | | | | |
| Roderick and Solange MacArthur Justice Center Attorneys | $198 | 344.19 | 10% | $61,334.66 |
| Husch Blackwell Attorneys | $198 | 835.5 | 10% | $148,886.10 |
| Husch Blackwell Paralegal | $116.61 | 40.7 | N/A | $4,746.03 |
| **March 23, 2018 – February 14, 2019** | | | | |
| Roderick and Solange MacArthur Justice Center Attorneys | $210 | 276.84 | 10% | $52,322.76 |
| Husch Blackwell Attorneys | $210 | 448.3 | 10% | $84,728.70 |
| Husch Blackwell Paralegal | $123.68 | 13.4 | N/A | $1,657.31 |
| **February 15, 2019 – December 31, 2019** | | | | |
| Roderick and Solange MacArthur Justice Center Attorneys | $222 | 243.46 | 10% | $48,643.31 |
| Husch Blackwell Attorneys | $222 | 151.5 | 10% | $30,269.70 |
| Husch Blackwell Paralegal | $130.75 | 5.1 | N/A | $666.83 |
| **TOTALS** | Hours: | 2,358.99 | 2,129.01 | **$433,255.39** |

The Court finds that the fee produced through the lodestar calculation is fair. *See Stallsworth v. Staff Mgmt. SMX, LLC*, No. 17-CV-4178-NKL, 2018 WL 2125952, at *1 (W.D. Mo. May 8, 2018) ("There is a strong presumption that the lodestar calculation represents a reasonable fee award.") (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *see also Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) (stating that "the lodestar method yields a fee that is presumptively sufficient to achieve [the] objective" of "induc[ing] a capable attorney to undertake the representation of a meritorious civil rights case"). This case was important and concerned constitutional issues, including issues of first impression, that required sophisticated and creative legal thinking. Because Plaintiffs have "won excellent results," they are "entitled to a fully compensatory fee award . . ." *Jenkins,* 127 F.3d at 716.

### b. **Expenses**

"Reasonable expenses of litigation incurred by counsel on the prevailing side can be awarded as part of the fees due under Section 1988." *Sapa Najin v. Gunter*, 857 F.2d 463, 465 (8th Cir. 1988). The expenses must be "[r]easonable expenses of the kind a law firm would ordinarily bill to its client." *Barrett v. Claycomb*, No. 2:11–CV–04242–NKL, 2013 WL 6920860 at *4 (W.D. Mo. Dec. 9, 2013).

Plaintiffs have incurred $33,163.81 in expert-related expenses, $272.93 in records and mailing expenses, and $1,013.41 in travel expenses (for depositions, limited meetings with clients, and court appearances). Defendants do not suggest that any of the costs Plaintiffs incurred in connection with this case are unreasonable. The Court, having reviewed the documentation of expenses submitted by Plaintiffs' counsel, sees no reason for disallowing any expense.

## III. CONCLUSION

For the reasons discussed above, the Court grants the motion for fees and expenses. The Court awards to Plaintiffs' counsel a total of $433,255.39 in fees and $35,374.45 in costs.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: March 30, 2020  
Jefferson City, Missouri